STATE ex rel. ALFRED SCHEFFER v. PHILIP C. JUSTUS.[1]

January 17, 1902.

Nos. 12,896—(213).

**Blacklisting—Laws 1895, c. 174.**

Laws 1895, c. 174 (excluding consideration of section 3), is not in conflict with section 2, article 1, section 27, article 4, and sections 33 and 34, article 4, of the state constitution, nor the fourteenth amendment of the federal constitution.

Writ of habeas corpus issued from the supreme court on relation of Alfred Scheffer, directed to Philip C. Justus as sheriff of Ramsey county. Writ discharged.

*Morphy, Ewing & Bradford,* for relator.

*W. B. Douglas,* Attorney General, *T. R. Kane,* County Attorney, and *O. H. O'Neil,* Assistant County Attorney, for respondent.

LEWIS, J.

The relator was arrested under a criminal warrant issued out of the municipal court of the city of St. Paul upon the complaint of one William Harvey, which charged that the relator, as the agent of Scheffer & Rossum, a copartnership, by whom he had been employed, and which employment he had voluntarily left, did wrongfully, wilfully, and unlawfully seek to prevent and hinder the complainant from obtaining work with another firm.

The imprisonment is claimed to be unlawful for the following

[1] Reported in 88 N. W. 759.

reasons: That Laws 1895, c. 174, is unconstitutional, because it contravenes the provisions of section 2, article 1, section 27, article 4, and sections 33 and 34, article 4, of the state constitution, and the provisions of the fourteenth amendment of the federal constitution.

The title to Laws 1895, c. 174, reads as follows:

"An act to prohibit the practice of blacklisting and the coercing and influencing of employees by their employers."

Section 1 prohibits the combination of two or more employers of labor for the purpose of interfering with or preventing any person, either by threats, promises, or blacklisting, from procuring employment.   Section 2 reads as follows:

"No company, corporation or partnership in this state shall authorize, permit or allow any of its or their agents to, nor shall any of its or their agents blacklist any discharged employee or employees, or by word or writing seek to prevent, hinder or restrain such discharged employee or any employee who may have voluntarily left such company's or person's service from obtaining employment from any other person or company."

Section 3 prohibits employers from requiring their employees not to join or become members of labor organizations, as a condition of their employment.   Section 4 declares a violation of the act a misdemeanor.

The complaint under consideration was drawn with special reference to the provisions of section 2, and if that section, standing alone, without reference to the provisions of section 3, may be considered valid, then it will be unnecessary to determine the validity of the latter section; and, inasmuch as the case does not depend upon the validity of section 3, we deem it wise not to enter into a discussion of the propositions urged by relator.   Under the decisions of this court the act may be considered, in reference to its constitutionality, without regard to the provisions of section 3. In other words, if any part of the act is valid, the whole does not become invalid because a portion of it is so considered.   Reimer v. Newel, 47 Minn. 237, 49 N. W. 865; Simard v. Sullivan, 71 Minn. 517, 74 N. W. 280.

Excluding section 3, then, is the title suggestive of the subject-

matter of the act, which is the coercing and influencing of employees by their employers? The object is to prohibit such coercion and influence. Conceding that the word "blacklist," as used in the title, has no well-defined meaning in the law, either by statute or judicial expression, the general understanding of the term is that it has reference to the practice of one employer presenting to another the names of employees for the purpose of furnishing information concerning their standing as employees, and, so understood, it may have reference to the subject of influencing or coercing employees or employers. Section 2 deals with the question of an employer influencing or coercing the actions of an employee who voluntarily leaves his employ, and is therefore within the subject suggested by the title. But it is urged that section 2 is objectionable to the provisions of the constitution upon the ground that it is class or special legislation, having application only to corporations or partnerships, as distinguished from individual employers. This argument is based upon the omission from the first part of the section of the word "person." While true that word is omitted from the first part of section 2, yet it is used in the next to the last line in such connection that it becomes necessary either to drop the word out of the section entirely, or to supply it in connection with the words "company," "corporation," or "partnership." Section 1 has reference to all employers, without regard to whether they are corporations, partnerships, or individuals. So with sections 3 and 4, where the word "person" is used.

It was evidently not the intention of the legislature to discriminate in section 2 against an individual employer, when the other sections of the act are plainly made applicable to individuals. Employers, as distinguished from employees, do not constitute a class, within the constitutional prohibition. Those acts which are declared unlawful by the statute are peculiar to employers of labor. The act, being applicable to all members of the class, is not invalid because limited to that class. Cameron v. Chicago, M. & St. P. Ry. Co., 63 Minn. 384, 65 N. W. 652. We therefore hold that section 2 of the act applies to individuals as well as to companies, corporations, and partnerships, and is not class legislation.

Again, it is insisted that an employer of labor has the natural right, under the constitution, state and federal, to give such advice and information as he desires with respect to his employees, whether they have been discharged for cause or without cause, or whether they have voluntarily left the employment. This leads to a consideration of what the offense is, as set forth by the provisions of section 2. An employee who voluntarily leaves his employment is one who has the right to do so. He violates no contract obligations. Presumably, he is an employee in good standing, and leaves because it is to his advantage so to do; and if he seeks employment elsewhere he is entitled to the presumption that his reputation as an employee has been unharmed by the fact of his leaving. The fact that such an employee voluntarily abandons his employment does not give the employer a right to prejudice his employment elsewhere. Under such circumstances, a communication designed to prevent such employment is presumably a reflection upon the standing of the employee.

It is no answer to say that the employer may have cause for making such communication; that it may be to the advantage of the new employer, and for the mutual advantage of all such employers, to have notice of the character of the employee. If there is any valid reason for such communication, it would be available only as a matter of defense. The act does not attempt to interfere with the right of an employer to discharge an employee for cause or without cause. It does not seek to prohibit an employer from communicating to other employers the nature and character of his employees, when the facts would be for their interest. While such interference by an employer is not expressly characterized as malicious, that intent is necessarily implied. It is the purpose of this law to protect employees in the enjoyment of those natural rights and privileges guarantied them by the constitution, viz., the right to sell their labor and acquire property thereby. The act is valid, and the conviction must be sustained.

Therefore the writ is quashed, and the relator is remanded to the custody of the sheriff of Ramsey county.