GALVESTON, H. & S. A. RY. CO. v. STATE. (No. 5356.)

(Court of Civil Appeals of Texas. Austin. Dec. 23, 1914. On Motion for Rehearing, April 21, 1915.)

MASTER AND SERVANT &#9901;11—REGULATIONS—VALIDITY—RIGHT TO DISCHARGE EMPLOYÉS.

The Blacklisting Statute (Acts 31st Leg. c. 89), requiring railroad companies to furnish discharged employés with a statement of the cause of their discharge, and to furnish employés voluntarily leaving the service with a statement to that effect showing whether their services were satisfactory, is unconstitutional.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. &#9901;11.]

Jenkins, J., dissenting.

Appeal from District Court, Travis County; Chas. A. Wilcox, Judge.

Action by the State of Texas against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, and W. B. Garrett, of Austin, for appellant. B. F. Looney, Atty. Gen., and Luther Nickels, Asst. Atty. Gen., for the State.

KEY, C. J. In this case appellee, the state of Texas, recovered judgment for $1,000 against appellant railway company, and the latter has prosecuted an appeal. The suit is founded upon article 597 of the Revised Statutes of 1911, in which a penalty of $1,000, recoverable by the state, is prescribed for a violation of the act of the Thirty-First Legislature (chapter 89) known as the "Blacklisting Statute." In this court, as well as in the court below, appellant railway company vigorously assails the constitutionality of that statute; and, knowing that a case involving the same questions was pending in

our Supreme Court, we have awaited the decision of that court. The case referred to is St. Louis Southwestern Railway Company of Texas v. Thos. A. Griffin, 171 S. W. 703, and was decided last week by the Supreme Court, which latter tribunal held that the statute referred to is unconstitutional and void. Following the decision in that case, it is ordered that this case be reversed and judgment here rendered for appellant.

Reversed and rendered.

On Motion for Rehearing.

PER CURIAM. Motion for rehearing overruled.

JENKINS, J. (dissenting). On a former day of the present term of this court, this case was reversed and rendered upon the authority of Railway Co. v. Griffin, 171 S. W. 703, wherein the Supreme Court of this state held the act commonly known as the "Blacklisting" statute to be unconstitutional, and a motion for rehearing herein has been overruled by the majority of this court solely upon the authority of that case. Under ordinary circumstances, I would feel bound by a decision of our Supreme Court, whatever might be my views in reference thereto; but in the instant case I feel justified in declining to follow that honorable tribunal for the reasons hereinafter set forth.

1. The statute under consideration was held to be constitutional by the Fifth Court of Appeals in Railway Co. v. Hixon, 126 S. W. 338, and again by the Fourth Court of Civil Appeals in the Griffin Case, supra, 154 S. W. 583. The constitutionality of the statute was challenged in the petition for writ of error in the Hixon Case, but was not passed on by the Supreme Court. The decision in the Griffin Case, 171 S. W. 703, was by a divided court. It thus appears that this statute has been held to be constitutional by three district judges, six judges of Courts of Civil Appeals, and one supreme judge, and has been declared to be unconstitutional by only two members of the Supreme Court. For these reasons, not being able to concur in the views of the majority of the Supreme Court, I believe that the issue should be again submitted to the consideration of that honorable tribunal.

2. I regard the issue as to the constitutionality of this statute important, not only because it is always a serious matter to declare a statute unconstitutional, but because this statute affects in a vital manner the welfare of the 60,000 railway employés in Texas, the railway companies, and the entire citizenship of this state. This statute is based upon a condition which, perhaps, we should judicially recognize, viz., that railway companies refuse to employ those who have previously worked for other companies who cannot bring a statement from their former

employer as to why they quit its service. The railway companies are clearly within their rights in so doing. If this law is complied with, it will protect railway companies from incompetent employés, the public from the dire consequences that often result from the employment of incompetent or negligent persons, and faithful and competent employés from the oppression of railway corporations, and from the spite and prejudice of their vice principals. As was said by the Supreme Court of Kentucky in Hundley v. Railway Co., 105 Ky. 162, 48 S. W. 429, 63 L. R. A. 292, 88 Am. St. Rep. 298:

One who follows "a certain trade or calling for years may be almost unfitted for any other business. To deprive him of his trade or calling is to condemn, not only him, but perchance a wife and children, to penury and want. Public interest, humanity, and individual rights, alike, demand the redress" for wrongs which are followed "by such lamentable consequences."

I believe that it is within the police power to prevent the infliction of such wrongs. The power to deny an employé who voluntarily quits the service of a railroad company, or is discharged therefrom, a statement as to why he quit or was discharged, is, under existing conditions, the power to deny him the opportunity to labor in his vocation. This is a power that no just railroad manager ought to desire, and that no unjust manager should be permitted to exercise. ·

3. In the Griffin Case, supra, the court said that an employer has the right to discharge an employé without cause and without notice. This is no argument against the statute under consideration. It does not attempt to deny or abridge such right. Griffin's cause of action was not based upon his being discharged, with or without cause, but upon the railway company's giving him a false statement as to the cause of such discharge.

4. The court further says:

"The citizen has the liberty of contract as a natural right which is beyond the power of the government to take from him."

I do not so understand the law. The courts will not only refuse to enforce some contracts, but, in certain instances, will declare a contract to be a crime, as witness our antitrust statutes and statutes against the employment of persons to commit crimes. The citizen has the right of contract only so far as such right is not abridged by law or public policy, and the law may rightfully abridge the right of contract when the public welfare so demands.

5. In the Griffin Case, supra, the court held that the blacklisting statute violates section 8 of article 1 of our state Constitution in reference to free speech. Quoting from the Supreme Court of Georgia, In Wallace v. Ry. Co., 94 Ga. 732, 22 S. W. 579, it says: "The right to speak includes the corresponding right to remain silent." The answer to this is that a limited right of free speech is expressly guaranteed by the Constitution, while the right of silence is not mentioned in that instrument, except in reference to compelling one to give evidence against himself. If such right exists, it must be found elsewhere than in the section of the Constitution referred to. Continuing the quotation from the Georgia case, the court says that this statute is "violative of the general private right of silence enjoyed in this state by all persons,· natural or artificial, from time immemorial." No such absolute right was ever enjoyed by any person in this or any other state or in any civilized country. Men are daily required to speak in courts and before grand juries, when they would prefer to remain silent.

The article of the Constitution in reference to free speech declares that every person shall be responsible for the abuse of speech, and we have from the beginning had laws upon our statute books punishing such abuse, both civilly and criminally. Why should not the Legislature have the power to punish the abuse of the right of silence? Silence under some circumstances is as positive a wrong as slanderous speech. Silence has frequently been held to amount to fraud or to an estoppel, whereby men have lost their property.

6. But the right of silence was not involved in the Griffin Case. The railway company did not remain silent. It spoke, and, having voluntarily chosen to speak, good morals required that it should speak the truth. I cannot believe that a law enforcing such moral obligation is unconstitutional.

7. The court holds, in the Griffin Case, that the statute under consideration is "in violation of the constitutional right of equal protection of the law as secured by the fourteenth amendment to the Constitution of the United States." In what respect is not stated. Paraphrasing the invocation of Madam Roland to the statute of liberty erected on the site of the Bastile, we may well exclaim: "Oh, Equal Protection of the Law! How often has lawless oppression sought shelter under thy wings!" As I see it, the "Blacklisting" statute does not interfere with railway companies in the exercise of any right to which they ought to be entitled. It requires nothing but justice at their hands. As was said of a similar statute by the Supreme Court of Minnesota (State v. Justus, 85 Minn. 279, 88 N. W. 759, 56 L. R. A. 757, 89 Am. St. Rep. 550):

"It is the purpose of this law to protect employés in the enjoyment of those natural rights and privileges guaranteed them by the Constitution, viz., the right to sell their labor and acquire property."

Their labor is their property. Constitutions are made to protect rights, not to shield wrongs.

With all due respect for our Supreme Court, for the reasons above stated, and for additional reasons to be found in the able opinion of Mr. Justice Moursund in Railway

Co. v. Griffin, 154 S. W. 583, I decline to follow the opinion in Railway Co. v. Griffin, 171 S. W. 703, and dissent from the action of my Associates in overruling the motion for a rehearing herein.