## STATE v. MATT MOILEN AND OTHERS.[1]

April 19, 1918.

No. 20,831.

**Crime — legislative power to define is exclusive — constitutionality of statute.**

1. It is the exclusive province of the legislature to declare what acts, deemed inimical to the public welfare, shall constitute a crime, to prohibit the same and impose appropriate punishments for a violation thereof. Judicial consideration of such enactments is limited to the inquiry whether the constitutional rights of the citizens are thereby violated or impaired.

**Criminal syndicalism — sabotage — act constitutional.**

2. Chapter 215, Laws 1917, declaring and defining the crime of criminal syndicalism, and prohibiting the advocacy or teaching of sabotage

[1]Reported in 167 N. W. 345.

or other methods of terrorism as a means of accomplishing industrial or political ends, is not obnoxious to either the state or Federal Constitution, and no rights thereby secured or protected are in any way impaired or abridged.

**Same — cruel punishment.**

3. The penalties imposed by the statute for a violation thereof do not come within the constitutional prohibition against excessive fines or cruel and unusual punishments.

**Master and servant — legislation involving rights and duties.**

4. The relation of employer and employee may properly be made the basis of legislation involving rights and duties arising therefrom.

**Sabotage — question for jury.**

5. On the facts presented by the indictment and certified case, it is *held* that the question whether defendant intended by the distribution of the posters referred to in the opinion to advocate the form of sabotage condemned by the statute was one of fact for the jury.

Defendants were indicted by the grand jury for the crime of criminal syndicalism, tried in the district court for St. Louis county before Freeman, J., and a jury which found defendant Maki guilty of the crime charged in the indictment. At the request of the convicted defendant the case was certified to the supreme court upon the two questions set out in the first paragraph of the opinion. Remanded.

*Sigmond M. Slonim,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Warren E. Greene,* County Attorney, and *Edward L. Boyle,* Assistant County Attorney, for the state.

BROWN, C. J.

Defendants were jointly indicted by the grand jury of St. Louis county, and thereby charged with the crime of criminal syndicalism, as that crime is defined and declared by chapter 215, p. 311, Laws 1917. Defendant Maki on a separate trial was found guilty as charged in the indictment, and at his instance and before sentence was pronounced the cause was certified to this court for the determination of two questions, namely:

140 M.—8.

(1) Is the statute on which the prosecution is founded a valid constitutional law? and if valid

(2) Do the facts presented by the indictment and certified record constitute a violation thereof?

We answer both questions in the affirmative.

The statute in question defines the crime charged against defendant in the following language:

"Criminal syndicalism is hereby defined as the doctrine which advocates crime, sabotage (this word as used in this bill meaning malicious damage or injury to the property of an employer by an employee) violence or other unlawful methods of terrorism as a means of accomplishing industrial or political ends."

The advocacy or teaching of the acts or things thus condemned, whether by word of mouth or by the circulation, distribution or public display of written matter in any form is declared a felony, punishable by imprisonment in the state prison for not more than 5 years, or by fine not exceeding $1,000, or by both fine and imprisonment. Public assemblies for the advocacy and teaching of the condemned doctrines are prohibited, and all persons voluntarily participating in any such assembly by their presence, aid or instigation, are declared guilty of a felony and punishable by imprisonment for not more than 10 years, or by a fine not exceeding $5,000, or by both fine and imprisonment.

It is contended by defendant that the statute violates the provisions of the Fourteenth Amendment of the Federal Constitution, wherein it is declared that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor deprive any person of life, liberty or property without due process of law, nor deny to him the equal protection of the law. And, further, that the statute violates the provisions of the state Constitution prohibiting special or class legislation, and also the prohibition against excessive fines and cruel and unusual punishments for crimes.

1. The contention that the statute violates rights granted and secured by the Federal Constitution is without special merit. The design and purpose of the legislature in the enactment of the statute was the suppression of what was deemed by the lawmakers a growing menace to law and order in the state, arising from the practice of sabotage and other

unlawful methods of terrorism employed by certain laborers in further-ance of industrial ends and in adjustment of alleged grievances against employers. The facts surrounding the practice of sabotage, and like in terrorem methods of self-adjudication of alleged wrongs, are matters of common knowledge and general public notoriety of which the courts will take notice. That they are unlawful and within the restrictive power of the legislature is clear. Sabotage, as practiced by those ad-vocating it as an appropriate and proper method of adjusting labor troubles, embraces, among other lesser offensive acts, the wilful and in-tentional injury to or destruction of the property of the employer in retaliation for his failure or refusal to comply with wage or other kin-dred labor demands. It amounts to malicious mischief and is a crime at common law as well as by statute. The methods of terrorism re-ferred to in the statute have close relation to sabotage, and are practiced for the purpose of intimidation, and to coerce employers into a compli-ance with labor demands. Methods of that sort are equally unlawful and open to legislative condemnation.

It is the exclusive province of the legislature to declare what acts, deemed by the lawmakers inimical to the public welfare, shall constitute a crime, to prohibit the same and impose appropriate penalties for a violation thereof. With the wisdom and propriety thereof the courts are not concerned. State v. Shevlin-Carpenter Co. 99 Minn. 158, 108 N. W. 935, 9 Ann. Cas. 634; Clark & Marshall, Crimes, § 41. Judicial con-sideration of enactments of the kind is limited to the inquiry whether the constitutional rights of the citizen have been invaded or violated. If such rights be in no wise infringed or abridged the statute must stand, however harsh it may seem to those who run counter to its com-mands. It requires no argument to demonstrate that the subject matter of this statute was and is within legislative cognizance, vesting in that body the clear right to prohibit the advocacy or teaching of the iniqui-tous and unlawful doctrines which it condemns.

The argument in attempted palliation or justification of the practice of sabotage, on the theory that it is an appropriate and effective method of combating or countervailing frauds committed by others, such as the act of the manufacturer in the adulteration of food products with in-gredients and foreign substances detrimental to the consumer, which is

placed on the market under the label of pure food, is wholly beside the
question. The law equally condemns frauds and deceits of that kind and
the perpetrator thereof is punishable to the extent and in the manner pre-
scribed by particular statutes. No person heretofore has had the cour-
age publicly to advocate such frauds as a means of redressing alleged
wrongs, nor the temerity, when charged with a violation of the statutes
prohibiting the same, to appeal to the courts on the claim that the adverse
statute impaired his constitutional liberties.

It follows that no right granted or secured to the citizen by either
the Federal or state Constitution has in any way been taken away or
impaired.

2. It is next contended that since the statute is limited in its applica-
tion to employer and employee, with protection only to the employer to
the exclusion of all other persons, it is class legislation and a denial of
the equal protection of the law, and for that reason unconstitutional and
void. The point is without force. While the practice of sabotage ap-
plies only between employer and employee, the other methods of terror-
ism referred to in the statute are not so limited, and the statute in that
respect has general application. But for the purposes of the case it
may be conceded that the statute applies only to the relation of employer
and employee, yet we have no difficulty in affirming its validity against
this attack. The relation of master and servant, employer and employee,
has long been the basis and foundation for specific legislation in this
state, as well as in the other states of this country. And, though often
vigorously challenged as class legislation, statutes applying only to that
relation have in later years been sustained by the courts with few ex-
ceptions. A few instances of such legislation may be referred to for
the purposes of comparison.

In an early day in this state the common law rule of nonliability of
the master for the negligence of fellow servants was abolished by statute
as to railroad employees. The statute, though it applied to and pro-
tected railroad employees only, was sustained in Lavallee v. St. Paul, M.
& M. Ry. Co. 40 Minn. 249, 41 N. W. 974. The so-called blacklisting
of employees by employers was prohibited, and the statute was sus-
tained in State v. Justus, 85 Minn. 279, 88 N. W. 759, 56 L. R. A. 757,
89 Am. St. 550. A statute prohibiting the malicious interference by

combination of employers to prevent a discharged employee from obtaining employment elsewhere, was upheld in Joyce v. Great Northern Ry. Co. 100 Minn. 225, 110 N. W. 975, 8 L.R.A.(N.S.) 756. Statutes regulating the hours of labor, and prohibiting the employment of women and children except upon adequate compensation have been sustained, though the classification for such statutes is as limited and restricted as that in the case at bar. Williams v. Evans, 139 Minn. 45, 166 N. W. 504. In State v. Smith, 58 Minn. 35, 59 N. W. 545, 25 L. R. A. 759, a statute in protection and for the comfort of street car motormen was sustained against the attack of class legislation. But the most conspicuous instance of this kind of legislation appears in the case of Mathison v. Minneapolis Street Ry. Co. 126 Minn. 286, 287, 148 N. W. 71, L. R. A. 1916D, 412, where a statute imposing liability upon the employer for an accidental injury to his employee was held not obnoxious to the objection here made. But further reference to the cases need not be made. The rule is thoroughly settled that the relation of master and servant may properly be made the classification for legislation concerning rights, duties and obligations arising therefrom.

3. The contention that the penalty fixed by the statute violates the provisions of the Constitution against excessive fines and cruel and unusual punishments for crime is not sustained. The nature, character and extent of such punishments are matters almost wholly legislative. The legislature may prescribe definite terms of imprisonment, a specified amount as a fine, or fix the maximum and minimum limits of either, which the courts are bound to respect and follow. In fact the court has jurisdiction to interfere with legislation upon this subject only when there has been a clear departure from the fundamental law and the spirit and purpose thereof and a punishment imposed which is manifestly in excess of constitutional limitations. 14 Am. & Eng. Enc. (2d ed.) 436; State v. Poole, 93 Minn. 148, 100 N. W. 647, 3 Ann. Cas. 12; State v. Durnam, 73 Minn. 150, 75 N. W. 1127. The term cruel and unusual punishment, as used in the Constitution, has no special reference to the duration of the term of imprisonment for a particular crime, though it would operate to nullify the imposition by legislation of a term flagrantly in excess of what justice and common humanity would approve. The purpose of incorporating that particular provision in the Constitution

was to prevent those punishments which in former times were deemed appropriate without regard to the character or circumstances of the crime, but which later standards in such matters condemned as unjust and inhuman; such punishments as burning at the stake, the pillory, stocks, dismemberment and other extremely harsh and merciless methods of compelling the victim to atone for and expiate his crime. The intention was to guard against a return to such inhuman methods. The punishments fixed by this statute do not exceed the limit of legislative discretion, and the statute must stand. It is possible that an excessive punishment may in a particular case be imposed by the court. But that possibility will not destroy the statute. The sentence may be reviewed on appeal and if found excessive proper correction may be made or ordered. No sentence has yet been pronounced in this case, and we assume that it will be in harmony with the special facts of the case. Section 9219, G. S. 1913.

4. We come lastly to the question whether the facts presented by the indictment and certified record show a violation of the statute. There was a trial below and a verdict of guilty. The evidence is not returned to this court, though the certificate of the trial judge is to the effect that the evidence presented justified a finding of all the facts alleged in the indictment. The charge made by the indictment is that at the time and place stated therein defendants did wrongfully and feloniously circulate, distribute and publicly display, certain written and printed matter in the form of posters (photographic copies of which were made a part of the indictment), which were posted upon certain buildings in the village of Biwabik, St. Louis county, and which contained printed matter advocating and teaching that industrial and political ends should be brought about by crime, sabotage, violence and other unlawful methods of terrorism. We reproduce the photographic copy of the posters (see page 119), for without it no clear understanding of their nature can be had.

In this connection and in further explanation it may be said that the posters are small, an inch and a half to two inches in size. The background of the circle in which a snarling black cat appears is bright red in color; the background in the next to the right in which the large wooden shoe appears is also a bright red, and so is the flag containing the words

"Abolition of the Wage System," and also the poster labeled "Join The One Big Union." These were all posted about the village in the night time, or as expressed in the certified record, "under cover of night," but there was no evidence offered in explanation of the figures and characters portrayed except that contained in the posters themselves.

The question presented is, does the case so made show an advocacy and teaching of the form of sabotage or the other methods of terrorism designed to effect industrial and political ends which the statute condemns? We think and so hold that the question was one of fact for the jury.

There is, it is true, an innocent meaning to sabotage, at least a mean-

ing not condemned by this statute. The statute makes criminal the advocacy of that form of the practice which teaches the destruction of or injury to the property of an employer by an employee in furtherance of industrial ends. But the posters which defendant distributed and caused to be publicly displayed do not attempt to limit the sabotage thus advocated under the captions in large black type, "Beware," and "We never Forget Sabotage," to the innocent variety. And taking all the posters together, headed by the one with the snarling black cat, we are clear that the jury were justified in finding that the vicious kind of sabotage was intended, and that the public display thereof was an advocacy of such doctrine by the defendant. The whole atmosphere given out by the posters is one of intimidation, indicative of a purpose to incite fear in the employers of labor and to compel submission to labor demands. If defendant intended some innocent phase of the doctrine of sabotage, he should have made it appear upon the face of the posters, and not having done so the jury were justified in finding that he was advocating sabotage in its offensive form.

The proceedings below are sustained, the certified questions answered as heretofore stated, and the cause will be remanded for further proceedings.