THEODORE GENE HINRICHS, H. DON GULOVSEN AND WILLIAM ROBERT BURMAN, PETITIONERS, v. THE FIRST JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF ORMSBY, AND HONORABLE FRANK B. GREGORY, PRESIDING JUDGE, RESPONDENTS.

No. 3869

May 13, 1955.                              283 P.2d 614.

*Diehl & Recanzone,* of Fallon, *Homer G. Angelo,* of Carson City, and *Drendel & Dixon,* of Reno, for Petitioners.

*Cameron M. Batjer,* District Attorney, Carson City, for Respondents.

## O P I N I O N

By the Court, BADT, J.:

Petitioners seek a writ of prohibition to prohibit the respondent court from proceeding with the trial of a criminal charge against petitioners. The petition attacks the constitutionality of our statute defining as first degree murder, with the death penalty, the death of a human being caused by an escape or attempted escape of persons lawfully imprisoned in the state prison. The specific points of this attack are dealt with in this opinion, in which we hold that there is no merit in any of the single points of the challenge or in the combination of all of them.

The statute in question is sec. 10499, N.C.L. 1929, which has its origin in 1866 Stats. 166, and reads as follows: "If one or more persons, lawfully imprisoned in the state prison, shall, separately or together, escape, or shall, separately or together, attempt to escape from such prison; and being so engaged, he, they, or either

of them, shall cause the death of any human being in making, or attempting to make, such escape, the prisoner or prisoners causing such death shall be deemed guilty of murder in the first degree, and, on conviction thereof, shall suffer death." Under this section the district attorney of Ormsby County filed an information charging petitioners with the commission of murder in the first degree in the manner following: "That the said defendants did, on or about the 17th day of September, 1954 * * * while lawfully imprisoned in the said Nevada State Prison, did then and there conspire together, to, and did form the intentions and common purpose of escape from the Nevada State Prison, and did then and there escape from the Nevada State Prison and while so engaged in said escape did, willfully, unlawfully and feloniously, and without authority of law, kidnap, seize, take, hold and carry away another person, to-wit, George Everett Miller, a guard at said State Prison, and did force him to accompany them * * * out of the said Nevada State Prison and from a place of safety to a place known by them to be a place of great danger and did then and there expose him, the said George Everett Miller, to said danger from attack upon them * * * by guards of the said Nevada State Prison in preventing them from escaping and did cause the said George Everett Miller, a human being, while being so exposed, to have inflicted upon him, mortal wounds by a bullet fired by a guard in the said Nevada State Prison in an attempt to prevent [their] escape * * *; that from said mortal wounds the said George Everett Miller then and there died."

The district court overruled a demurrer based upon virtually the same points presented to this court and set the case for trial, which has been delayed by our preliminary writ.

It is asserted by petitioners (1) that the act denies them the equal protection of the laws; (2) that due process is lacking because the information is so ambiguous as to render it impossible for petitioners to ascertain the crime

with which they are charged; (3) that the act, because of its uncertainty, would deprive petitioners of their lives and liberty without due process of law; and (4) that it provides a cruel and unusual punishment disproportionate to the offense.

(1) The first contention, that the statute denies to petitioners the equal protection of the laws, is based upon the rule that "classification" must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed and can never be made arbitrarily and without any such basis. This rule, enunciated in Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 22 S.Ct. 431, 443, 46 L.Ed. 679, is amply supported by Mr. Justice Harlan's citations in that case, although it is there conceded that, generally speaking, the state when enacting laws may, in its discretion, make a classification of persons in order to subserve public objects. Mr. Justice McKenna dissented, but expressed some views in harmony with the majority opinion. He said: "Classification, therefore, is necessary, but what are its limits? They are not easily defined, but the purview of the legislation should be regarded. A line must not be drawn which includes arbitrarily some persons who do and some persons who do not stand in the same relation to the purpose of the legislation. But a wide latitude of selection must be left to the legislature."

In view of the foregoing it is important to note that the statutory classification is attacked by petitioners not because of the persons included therein, or because of the persons excluded therefrom (as in Connolly v. Union Sewer Pipe Co., supra), but because the classification would include all participants in an escape or attempted escape resulting in the death of a person in any one of a series of recited hypothetical cases. Infirmity of the statute under the equal protection clause is not thus proved. The statute applies to all persons lawfully imprisoned in the state prison. The classification is clear.

In applying to all persons thus lawfully imprisoned, it excludes all other persons. Persons not there imprisoned could not escape or attempt to escape therefrom and could not come within the purview of the statute. Is then the classification based upon some reasonable ground—some difference which bears a just and proper relation to the classification? Petitioners rely on Ex Parte Mallon, 16 Ida. 737, 102 P. 374, 378, 22 L.R.A., N.S., 1123. The statute in that case provided a punishment for a prisoner escaping from the state prison as a term equal in length to the term he was serving at the time of the escape. This was held to be entirely unrelated to the crime for which he was being punished, namely, the escape, as a person escaping from confinement for a one-year term would then be sentenced to an additional term of one year, and a person escaping from confinement for a twenty-year term would then be sentenced to a further twenty-year term. The court there suggests, in what is frankly dictum, that the statute, to escape its infirmity, "could be made to apply *to all persons* who escape or attempt to escape from the state prison." (Emphasis supplied.) That is precisely what the present statute does.

In People v. Finley, 153 Cal. 59, 94 P. 248, the defendant was found guilty of murder and the death penalty was imposed under a statute providing that every person undergoing a life sentence, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon is punishable with death. The California court was interested in the genesis and origin of this then comparatively new statute and recognized, as a part of judicial as well as legislative knowledge, that convicts undergoing life sentences constitute a most desperate and dangerous class, reckless, without hope, and without bonds of restraint; that their acts of violence against fellow inmates, custodians, officers and guards and their savage attempts to escape formed a

part of the history of California. The court concluded that the classification was not arbitrary, but based upon valid reasons and distinctions; that the equal protection clause was not violated, as all persons in like cases would be subjected to like punishment. The decision was affirmed in Finley v. California, 222 U.S. 28, 56 L.Ed. 75, 32 S.Ct. 13, in which the classification of prisoners serving a life sentence was examined in its exclusion of convicts serving lesser terms. Under the test "whether there is a basis for the classification made by the statute" the United States Supreme Court held that the legislature had not transcended its power. See also the companion case of People v. Carson, 155 Cal. 164, 99 P. 970, involving the same attempted escape.

The concern of even the territorial legislature with attempted escapes was evident from "An Act Concerning Crimes and Punishments," approved November 26, 1861, Laws of the Territory of Nevada, first regular session, 1861, page 56. Special sections fixed severe penalties for releasing or rescuing prisoners after conviction, prisoners before conviction, conniving at such escapes on the part of sheriffs, jailors, etc., aiding escapes, supplying tools or weapons to imprisoned convicts, facilitating the escape of any person lawfully in custody, the permitting by a sheriff or constable of the escape of any prisoner in his custody, etc. In 1862 the territorial legislature made punishable by fine not exceeding $5,000 or imprisonment not exceeding one year, or both, visiting or communicating with any prisoner convicted of or charged with any felony imprisoned in the county jail other than the officer having the prisoner in charge, the prisoner's attorney or the district attorney, except with the written permission of the district attorney, and the consent of the sheriff, warden or other proper officer. Sections 4746–4747, Baily and Hammond, Stats. 1885, p. 1055. The 1866 legislature passed an act comprising six sections,

of which sec. 5 (sec. 4752, Baily and Hammond, General Stats. 1885, p. 1056) is identical in wording with sec. 10499, N.C.L. 1929.

We are left in no doubt as to the concern of the territorial legislature and of the early sessions of the state legislature with the necessity for classification of persons lawfully in custody as subject to severe penalties for escape or attempted escape. In this regard we are impressed with the pertinent observation in State v. Woodward, 68 W. Va. 66, 69 S.E. 385, 30 L.R.A. (N.S.) 1004, that in the exercise of the power to define crimes and fix their punishment "there must be a comprehension of all that the legislature did or could take into account; that is, a consideration of the mischief and the remedy." We conclude that the assignment of invalidity of the statute as a violation of the equal protection clause, by reason of an asserted arbitrary classification, is without merit.

(2) It is next asserted that there was a lack of due process because the information is so ambiguous as to render it impossible for petitioners to ascertain the crime with which they are charged. Prolixity, duplicity and ambiguity are charged and cases cited in which the existence of such faults has been held to be fatal. None of the cases cited is in point to support the contention that the information "clearly reveals the charge of four distinct offenses, to wit: conspiracy to escape, escape from prison, kidnapping and first degree murder." Petitioners might also have asserted that they were also charged with felonious assault upon the abducted guard, as well as other possible crimes incidental to the escape. The crime charged is murder. The facts are simply stated in order to bring it within the purview of the statute. The information simply recites the manner in which the offense was committed. The infirmities suggested are without merit. See 42 C.J.S. 1115, Indictments and Information, sec. 164; Id. 1127, sec. 170; Wilson v. State, 188

Ark. 846, 68 S.W.2d 100; Mohler v. State, 120 Md. 325, 87 A. 671.

(3) It is next contended that the statute is inoperative and void for uncertainty and that petitioners will be deprived thereby of their lives or liberty without due process in violation of section 1 of the fourteenth amendment to the federal constitution. This develops from the contention that the legislative intent in the use of the words "cause" and "causing" is not clear, and under authorities cited, that the asserted vagueness, ambiguity, failure to define the offense, indefiniteness and lack of determinative meaning, cannot be judicially supplied. Petitioners illustrate this contention by describing a number of hypothetical cases in which, under the statute, an escaping prisoner might be charged with "causing" the death of a human being. The most extreme of these hypothetical cases is put thus: "Prisoner escapes from prison, is a mile from the prison gates when a guard discovers his disappearance, rushes out the door, slips on the steps, falls, fractures his skull and as a result dies." A more extreme case might have been suggested in which the prisoner, a week later, still engaged in making his escape, is twenty miles from the prison gates, when a guard discovers the facts, rushes out the door and is killed from a fall on the steps. Examples could be carried to the most fantastic lengths. The cases are almost without number in which the courts have found it necessary to define "cause" with reference to criminal as well as tort actions. As an example, reference may be made to the repeated use of the word "cause" in the citations of the texts and authorities contained in the opinion in Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183. Protection against applying the statute to the fantastic lengths feared by petitioners may be fully afforded by appropriate instructions to the jury. We find this assignment likewise to be without merit.

(4) Finally petitioners contend that the statute provides a cruel and unusual punishment disproportionate to the offense. Here again petitioners seem concerned lest a mandatory death penalty might under the act be imposed upon a person but remotely connected with the means of death. However under the act the penalty attaches to action which is the cause of death. As such the penalty cannot be regarded as disproportionate to the crime. State v. Jon, 46 Nev. 418, 211 P. 676, 217 P. 587, 30 A.L.R. 1443.[1] Whether conduct in any particular case may properly be held to constitute cause is not a subject for our consideration at this time. The theory of petitioners under this assignment is illustrated by their citation of cases having to do with what are known as felony killings, particularly Commonwealth v. Moore, 121 Ky. 97, 88 S.W. 1085, 2 L.R.A., N.S., 719; Commonwealth v. Campbell, 7 Allen 541, 89 Mass. 541, 83 Am. Dec. 705; and People v. Udwin, 254 N.Y. 255, 172 N.E. 489, and respondents meet the contention by citation of Commonwealth v. Almeida, 362 Pa. 596, 68 A.2d 595, 12 A.L.R.2d 183. These cases however all deal with the question of whether the death of the person killed could be said to be caused by the respective defendants under the particular circumstances of the case. They do not deal with the question as to whether the death penalty was disproportionate to the offense if the defendant caused the death in the perpetration of a felony. We therefore refrain from a discussion of these cases. Petitioners say however that the death penalty, in cases where an escaping prisoner "shall cause the death of any human being in making or attempting to make such escape" is so excessive as to

---

[1] As to the subject of cruel and unusual punishments in general, see State v. Moilen, 140 Minn. 112, 167 N.W. 345, 1 A.L.R. 331, and authorities therein cited; also State v. Woodward, 68 W. Va. 66, 69 S.E. 385, 30 L.R.A. (N.S.) 1004; Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422. As to the "well nigh unlimited" power of the legislature to define crimes and fix their punishment, see State v. Woodward, supra.

shock the conscience. It is no more shocking than the death penalty for a felony killing. This assignment we likewise find to be without merit.

As petitioners' claims that the respondent court and judge are without jurisdiction to try the criminal charge against them are without support in law, their petition for a writ of prohibition must be denied, the alternative writ vacated and the proceeding dismissed. It is so ordered.

MERRILL, C. J., and EATHER, J., concur.