CITY OF OLEAN, Plaintiff, *v.* W. COAST CONKLING and Another, Defendants.

Supreme Court, Cattaraugus County, October 30, 1935.

*John E. McAuliffe* [*Dana L. Jewell* of counsel], for the plaintiff.

*Hastings, Hornburg & Andrews* [*Leighton Wade* of counsel], for the defendants.

MALONEY, J. This action is brought by plaintiff, the city of Olean, to restrain the defendants from an alleged violation of a

zoning ordinance, viz., erecting and operating an automobile filling station in a block in said city claimed to have been zoned as residential property.

The city of Olean, in 1920 or prior thereto, adopted an ordinance providing for fire limits and construction of buildings in the city, which was effective on December 15, 1934, viz.:

" § 2. Plans to be submitted; permits. No walls, structure, building or part thereof, shall hereafter be built, enlarged or altered in said city until the plan of proposed work, together with a statement of the materials to be used, shall have been submitted to the chief of the fire department, who shall, if in accordance with the provisions herein contained, issue a permit for the proposed construction. Structures hereafter erected without permit and not in conformity with this ordinance shall be removed."

During the months from August to about the middle of December, 1934, the defendants were negotiating for the sale or rental of the premises, and in December, 1934, a verbal understanding was had with a tenant relative to the terms of a proposed lease of the premises for use as a gasoline service station. Plans and specifications thereof were prepared and submitted by defendants to the chief of the fire department of the plaintiff, who, in compliance with section 2 of the plaintiff's city ordinance, on December 15, 1934, duly issued to defendants a building permit, viz., " to erect a Standard Service Station."

On the 17th day of December, 1934, defendants proceeded to demolish a dwelling located on the premises, viz., to remove the verandas, etc., and in addition thereto defendants dug certain trenches in and about the front of said residence to be used as part of the foundation of the gasoline station, such demolition and work being of a substantial nature.

On December 19, 1934, the common council adopted an ordinance establishing, among others, the defendants' property as a residence district and prohibiting the erection of buildings thereon other than for residences. The ordinance is in part as follows:

" § 1. Each and every city block, (so-called), being the lands lying between intersecting streets in both directions, now occupied by and containing only buildings used exclusively for residence purposes, churches and school houses, and out buildings appurtenant thereto, in which there are now not less than ten dwelling houses, and all of such city blocks within the City of Olean, are hereby created and declared to be the residence district of said city.

" § 2. It shall be unlawful hereafter to erect within said residence district any building designed for use as * * * a gasoline filling station, automobile service station * * * or to erect

therein any tanks for the storage of oil or gasoline in excess of 250 gallons capacity, and it shall be unlawful hereafter to use or occupy any premises or buildings within said residence district for any of the purposes aforesaid not now in use therefor; and the erection of any such buildings and the alteration of any existing buildings within said district for the purposes aforesaid, and the use of any such premises not now in use therefor, for any of the purposes aforesaid are hereby prohibited."

The language of the ordinance clearly indicates that the phrase " city block " contained therein is intended to be both sides of one street between intersecting streets.

In *People ex rel. Beinert* v. *Miller* (100 Misc. 318, 327) the court said: " In a technical sense the word ' block ' may and often does designate such a territory, sometimes called a ' square block;' but it is also commonly used to designate that section of a ' square block,' so called, fronting on a street between two intersecting streets. The context clearly shows that it was used in the latter sense in subdivision e, being practically equivalent in meaning to the word ' portion ' as used in said subdivision, which clearly means ' front portion.' " This construction was approved by the Appellate Division (188 App. Div. 113, 118).

Adopting the above interpretation, the existence of the post office and library, buildings not used exclusively for residential purposes, churches or schoolhouses, on the west side of Union street, removes from operation of the ordinance the block including defendants' property.

Were we to adopt the plaintiff's interpretation, viz., that by " city block " is intended to mean a " square block," the following uncontroverted facts remove from operation of the ordinance the block including defendants' property:

(1) The location of a building on the west side of Barry street between Henley and South streets owned by Allen Williams, a portion of which is and was prior to December, 1934, rented to various corporations for use as an office, for which the owner receives a rental.

(2) That located on the premises owned by Howard Rodgers at 136 Garry street is a building (not used as an appurtenance to his residence) in which there is and has been stored for a great number of years plumbing fixtures, piping, etc., used in connection with his business of heating and ventilating contractor.

I find that the ordinance as adopted, were it to be found to be such an ordinance as was contemp ated by section 20, subdivision 25, of the General City Law, does not by its terms zone the block in which defendants' property is located as a residence zone.

The ordinance is specific that a block to be zoned as residence property must have been at the time of the adoption of the ordinance occupied by and containing only buildings used exclusively for residence purposes, churches and schoolhouses and outbuildings appurtenant thereto, in which block there are not less than ten dwelling houses.

" The Zoning Ordinance is in derogation of the common law rights to the use of private property. Its provisions should not be extended by implication." (*Matter of Monument Garage Corp.* v. *Levy*, 266 N. Y. 339, 344.) (*Welch* v. *City of Niagara Falls*, 210 App. Div. 170, 176; *People ex rel. Ortenberg* v. *Bales*, 224 id. 87, 89; affd., 250 N. Y. 598.)

All zoning legislation is in derogation of common-law rights to the use of property. Such legislation by municipalities derives its authority from the State. (General City Law, § 20, subd. 25.)

" Being designed to promote public convenience or general prosperity as well as public health, public morals or public safety the validity of a police regulation must depend upon the circumstances of each case and the character of the regulation for the purpose of determining whether it is arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. (*C., B. & Q. Ry. Co.* v. *Drainage Commrs.*, 200 U. S. 561.)" (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 298.)

Ordinances passed under this authority must " be designed to promote the public health, safety and general welfare," and made with " reasonable consideration " as to: (a) " the character of the district," (b) " its peculiar suitability for particular uses," (c) " the conservation of property values," (d) " the direction of building development."

All of these elements must be applied by the municipal legislature " in accord with a well considered plan."

" While the city is the public authority to which the Legislature has delegated the power to determine whether or not such restrictions are to be imposed and as to the character and extent of such restrictions, nevertheless the power has its limitation and the statute itself sets forth guides by which the municipality is bound." (*City of Utica* v. *Hanna*, 202 App. Div. 610, 612; *Matter of Barker* v. *Switzer*, 209 id. 151, 153.)

The fact is, in my opinion, that the ordinance in question was adopted without a well-considered or general plan or with relation to the benefit and advantage of the city as a whole. (*Coley* v. *Campbell*, 126 Misc. 869.)

The ordinance does not divide the city into geographical subdivisions, but attempts to establish each block as a separate district

in itself. Whether or not each of the block districts is residential or otherwise depends upon whether or not there are more than ten dwelling houses. It seems apparent that the ordinance is not in compliance with statutory authority permitting the designation of zoning districts in accordance with some comprehensive, well-considered plan. As was said by Mr. Justice HORTON in *Matter of Longley* v. *Rumsey* (130 Misc. 492, 494): "Because of the failure of this ordinance to deal with the matter in accordance with a comprehensive plan and because of the arbitrary method by which the character of the so-called districts is determined, it follows that this ordinance is not a valid restriction upon the use of the premises leased by these petitioners."

In *Harris* v. *Village of Dobbs Ferry* (208 App. Div. 853) the court said: "The Legislature did not intend that such restrictions on the property owners' rights should be haphazard, selecting one street or another from time to time. The regulation must be 'in accordance with a well considered plan,' applying to the entire village."

"The courts went a long way in extending the application of the police power so as to include 'zoning' within its scope. Conditions of life in cities rather compelled an extension of former concepts of the police power." (*Matter of Van Auken* v. *Kimmey*, 141 Misc. 117, 119.)

For the reasons above stated I am of the opinion that the ordinance as adopted is not a valid ordinance under the General City Law. Judgment may be entered in favor of the defendants against the plaintiff, dismissing plaintiff's complaint, with costs. Prepare findings accordingly.