CITY OF ALBANY, Respondent, *v.* HOLCOMBE ANTHONY, Appellant.*

Third Department, July 2, 1941.

*Woollard & Morris* [*Ernest B. Morris* of counsel], for the appellant.

*James J. McGuiness* [*Ralph S. Leonard* of counsel], for the respondent.

HEFFERNAN, J. On the 21st day of April, 1924, the common council of the city of Albany adopted an ordinance entitled, " An ordinance regulating and limiting the height and bulk of buildings heretofore erected and regulating and determining the area of yards, courts and other open spaces, and restricting congestion and regulating and restricting the locations of trades and industries and the location of buildings designed for specified uses and establishing the boundaries of zones for the said purposes, and providing penalties for the violation of its provisions." This ordinance was approved by the mayor of the city on the 5th of May, 1924, and thereupon became effective. Section 10 of that ordinance, which is the subject of this litigation, provides:

" Section 10.

" FAMILIES PER ACRE.

" No dwelling or tenement house shall hereafter be erected or altered to accommodate or make provision for more families per acre than the number indicated in the ' Schedule Limiting Height and Bulk of Buildings ' for the zone in which such dwelling or tenement house may be located. The maximum number of families

*Revg. 174 Misc. 470.

which may hereafter be housed on any plot of ground shall not exceed the integral number obtained by multiplying the acreage of such plot, whether its area is either more or less than an acre, by the number indicated in the ' Schedule ' for its particular zone. The limitations imposed by this section shall, however, not prohibit the erection of a one-family house on any plot containing at the time of the passage of this ordinance an area smaller than that required for a one-family house by the ' Schedule.' The area of no plot shall for the purposes of this section be deemed to extend more than one hundred feet back from its street front. A ' family ' as used in this section shall be deemed any number of individuals living and cooking together as a single housekeeping unit."

The schedule limiting the height and bulk of buildings, which is part of the ordinance, decrees that no more than thirty-five families per acre may be housed in any dwelling or tenement house situated in a B Residence Zone, the acreage to be computed as directed in section 10.

The complaint alleges that defendant is and has been since December 14, 1938, the owner of premises known as 75 and 79 Winthrop avenue in the city of Albany, which premises at the time he became the owner thereof consisted of two apartment houses, housing four apartments in each house, two on the first floor and two on the second floor. The zoning map of the city places 75 and 79 Winthrop avenue in a B Residence Zone. The apartment houses in question are situated on plots of ground fifty feet in width. The complaint further alleges that after defendant acquired title to these apartment houses and prior to October 1, 1939, he altered the buildings by placing therein a living apartment in the basement of each house and that both such apartments are now occupied by separate family units as living quarters. There is a further allegation to the effect that by computing the square foot area as directed in section 10 of the ordinance each plot of ground contains 5,000 square feet, whereas it would be necessary under the ordinance that a plot of ground situated in a B Residence Zone in order to house five families should contain land in excess of 6,000 square feet.

This action was instituted by the city against defendant to enjoin the violation of the ordinance. After the commencement of the action defendant moved to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, and from an order denying his motion defendant has come to this court.

The only point upon which defendant relies for reversal of the order is that that portion of section 10 which provides that the area

of no plot shall be deemed to extend more than 100 feet back from its street front is void and unconstitutional in that it deprives him of his property without due process of law.

The statute (Gen. City Law, § 20, subds. 24, 25, as added by Laws of 1917, chap. 483) authorizes the city to adopt zoning regulations. Defendant contends, however, that the ordinance in question is confiscatory, unreasonable, unconstitutional and not a proper exercise of the police power. He has the burden of overcoming the presumption of constitutionality applicable to such an ordinance. He must demonstrate that, as a matter of law, the regulations are unconstitutional, and that there is no permissible interpretation which justifies their adoption as a reasonable exercise of the police power of the State. (*Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288.) The police power is founded on the law of public necessity, and while primarily it inheres in the State and is an attribute of sovereignty, a large measure has been delegated to our cities for the purpose of protecting the lives, health and safety of the citizens. It should be responsive to the needs and conditions of the community. Our modern complex civilization, with its changing conditions and requirements, with increasing regulatory and restrictive legislation, has expanded its application to new subjects and demands. With the political, economical and social development of a community, the police power also develops to meet the changed and changing conditions. The preservation of the public health is the most important governmental function. Both liberty and property are subject to the police power of the State under which new burdens may be imposed on property and new restrictions placed on its use when the public welfare demands it. If the city had power to adopt this ordinance we would have no hesitation in sustaining it as a legitimate exercise of the police power. It can hardly be doubted that limiting the number of families in a single building where light, air space and health can be secured as normal living conditions increases the safety and security of home life and makes a better environment for the promotion and perpetuation of the happiness and contentment of the people. Discordant and unsightly surroundings may be just as distressing to people of keen sensibilities as that which is offensive and unsanitary. It is not unreasonable to say that the health and general physical and mental welfare of society would be promoted by single family residences and by limiting the number of families in residential sections. The owner of property in a restricted district is not deprived of its use by reasonable regulations. He may use it for the purposes to which the area in which it is located is dedicated. That he shall not be permitted to use it to the desecration of the community constitutes no unreasonable

or permanent hardship and results in no unjust burden. Individual interest must yield to public interest. That which is hurtful to the comfort, welfare and safety of society may always be prohibited under the police power, notwithstanding the incidental inconvenience or loss individuals may thereby suffer.

At the time of the adoption of the ordinance in question subdivision 24 of section 20 of the General City Law (as added by Laws of 1917, chap. 483) empowered the city " to regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts and other open spaces, and for said purposes to divide the city into districts. Such regulations shall be uniform for each class of buildings throughout any district, but the regulations in one or more districts may differ from those in other districts. Such regulations shall be designed to secure safety from fire and other dangers and to promote the public health and welfare, including, so far as conditions may permit, provision for adequate light, air and convenience of access, and shall be made with reasonable regard to the character of buildings erected in each district, the value of land and the use to which it may be put, to the end that such regulations may promote public health, safety and welfare and the most desirable use for which the land of each district may be adapted and may tend to conserve the value of buildings and enhance the value of land throughout the city."

It is apparent from reading this statute that the city was simply given power " to regulate and limit the height and bulk of buildings hereafter erected and to regulate and determine the area of yards, courts and other open spaces, and for said purposes to divide the city into districts." Under this statute the city of Albany had no authority whatever to enact an ordinance, such as the one before us, restricting the number of families that may lawfully be housed on an acre of ground or a fractional part thereof. (*Matter of Barker* v. *Switzer*, 209 App. Div. 151; appeal dismissed, 238 N. Y. 624.) Zoning laws which curtail and limit uses of real property must be given a strict construction, since they are in derogation of common-law rights and the provisions thereof may not be extended by implication. (*Matter of 440 E. 102d St. Corp.* v. *Murdock*, 285 N. Y. 298.) To remedy the defect in this statute the Legislature by chapter 394 of the Laws of 1925, effective April 8, 1925, amended subdivision 24 of section 20 so as to grant to cities the power " *to regulate the density of population in any given area.*" (*Matter of Stevens* v. *Clarke*, 216 App. Div. 351.) Obviously the purpose of this ordinance was to regulate the density of the population in a B Residence Zone by limiting its use to thirty-five families per acre. Obviously at the time when this ordinance

was enacted the city was not authorized to regulate the density of population in any given area and hence for that reason alone the ordinance in question is void.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to dismiss the complaint granted, with costs.

CRAPSER and FOSTER, JJ., concur; HILL, P. J., and BLISS, J., dissent with memoranda.

HILL, P. J. I dissent upon the following grounds: Defendant, the owner of real property located at 75 and 79 Winthrop avenue, Albany, N. Y., appeals from an order denying his motion to dismiss the complaint of the plaintiff in an action brought to restrain the defendant from utilizing his property for occupation by more tenants than is permitted by a zoning ordinance of the city. The complaint is assailed as not stating a cause of action.

The ordinance limits the number of families per acre within the zone in which defendant's property is located. The argument of his counsel is addressed to the unconstitutionality of a single sentence in the ordinance: " The area of no plot shall for the purposes of this section be deemed to extend more than one hundred feet back from its street front." Nothing appears to ndicate whether defendant's property does or does not extend more than one hundred feet back from its street front. If his property is of no greater depth than that, he is not a party aggrieved and may not test the constitutionality of the sentence. If it appears upon the trial of the action that his property is of a greater depth than one hundred feet, a serious question will be raised as to the right of the city in effect to confiscate the land back of the one-hundred-foot line. If that land may not be utilized for residential purposes in connection with the front part of the lot, it can be used for no purpose, as the area is limited to residences. The Legislature has granted to cities the right to regulate but not to confiscate.

BLISS, J. I dissent and vote to affirm. I believe this ordinance to have been a proper exercise of the city's power to regulate the bulk of buildings, to secure the objects of the statute, including convenience of access, as provided by subdivision 24 of section 20 of the General City Law, as it then stood. Furthermore, appellant does not question the power of the city to enact an ordinance regulating the density of population by area at that time.

Order reversed on the law and facts, with ten dollars costs and disbursements, and motion to dismiss complaint granted, with costs.