STATE OF NEVADA EX REL. ELTON B. DAVIE, PETITIONER, v. RONALD COLEMAN, AS BUILDING INSPECTOR OF THE CITY OF RENO, COUNTY OF WASHOE, STATE OF NEVADA, RESPONDENT.

No. 3631

November 17, 1950.                     224 P.2d 309.

*Sidney Fox,* of Reno, for Petitioner.

*Russell W. McDonald* and *Richard W. Blakey,* both of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

Petitioner seeks a writ of mandate to compel the respondent building inspector of the city of Reno to grant petitioner a building permit pursuant to petitioner's application and his accompanying proposed plans and specifications. Respondent's return is to the effect that his rejection of the application for the building permit was required, among other things, by the provisions of Reno city ordinance No. 791, which limits construction in the district to single-family residences. Petitioner alleges that he sought a review of respondent's

ruling by the board of adjustment of the city of Reno and by the city council of said city, which are the official agencies to review successively the orders of the building inspector upon appeal of an aggrieved applicant. We understand from the oral arguments presented to us that each of these hearings was in the nature of a trial de novo. The board of adjustment, and later the city council, sustained the order of the building inspector.

Petitioner's property, a frame house 42 feet in length by 30 feet in width and consisting of a basement and a first floor, situate on lot 23 of block H of the new Sunnyside Addition to Reno, and fronting 72½ feet on University Terrace, with a depth along Peavine Road of 128 feet, is known as No. 1095 University Terrace.

Petitioner's application showed that the desired alterations included the enlarging of certain rooms and closets, and the installing of an additional bathroom on the first floor, and the construction of a flight of steps leading to the basement. The proposed alterations in the basement included the following: "1. That a room approximately 7 feet by 8 feet shall be constructed, the same to constitute a kitchen and to include a range, a refrigerator, a sink and cupboards; 2. That the rear of said basement shall be extended 6 feet 6 inches to include a frozen food locker and a landing for said flight of stairs from the said first floor."

Petitioner alleges that respondent's refusal to issue the building permit is based on the grounds (1) that the building is situate in land use district R1, in which district only single-family residences are permitted under article 5, section 16 of ordinance 791, and (2) that the carrying out of the proposed alterations would result in a duplex house contrary to the provisions of such section. Respondent admits that this is so. As presently constructed, before giving effect to the proposed alterations, the basement includes a two-car garage, a bathroom, a living room with fireplace, and a bedroom; and the first floor includes a living room with fireplace, an outside veranda, a vestibule, a dining room, a kitchen, a utility

room, a bathroom and two bedrooms. Petitioner does not deny in his petition the correctness of respondent's conclusion that upon the making of the proposed alterations the house would be a duplex house; in other words that it would be within classification R2, permitted in a two-family residence district but not in a single-family residence district, namely, classification R1, the latter being the classification and the district in which the property is situate. We thus accept as correct the respondent's conclusion as to the effect of the proposed alterations.

We have not before us any transcript or record of the testimony or other evidence adduced before the board of adjustment or before the city council in the proceedings had before those agencies in their respective reviews of the order of the building inspector. Indeed it is not made to appear that such proceedings were reported. However, to his return to the alternative writ respondent has attached, as exhibit B, a certified copy of Reno city ordinance No. 791, "An ordinance to establish a Land Use Plan within the City of Reno regulating and restricting: The use of land * * *" etc., of which ordinance section 5 of article IV establishes eleven land use districts, the second classification whereof is identified by the symbol "R1," designating "single family residence district." Section 7 of article IV adopts a map entitled "Land Use Plan: Part of the Master Plan of Reno, Nevada," likewise submitted as a part of such exhibit B. This map comprises thirteen sheets, sheet 4 whereof covers that part of the city in which petitioner's property is situate. It appears therefrom that within the classification R1 are not only all of the lots in block H, but also all of the lots in all of the blocks for a considerable distance on all sides of block H. Thus, to the west, all lots are classified as R1 which front on Peavine Road, University Terrace, Mallard Place, Raymond Drive, Novelly Drive, Sunnyside Drive, Irving Park Circle, etc.; to the north and east all lots fronting on Sunnyside Drive, Whitaker Drive, Kimbal Drive, Sunnycrest

Drive, Hastings Drive, Sycamore Way, etc.; and, to the south, all lots fronting on University Terrace. In all of this area it is not indicated either by the official plat or by any allegation contained in the petition for a writ of mandamus, or in any suggestion made by petitioner, in his briefs or oral argument, that any single exception has been made or variance granted that would permit the construction or alteration of any structure that would deviate from the classification R1. Respondent properly calls attention to the situation of petitioner's neighbors who have purchased and built homes in this district in their reliance on the continued effectiveness of the ordinance and the land use plan and the classifications therein provided, and to the fact that petitioner contends for the privilege of exercising his constitutional rights to use his own property "in a vacuum" as it were. Although this expression does not find precedent in the more conservative language of the courts, we do feel that it indicates the error of petitioner's position in failing to recognize the limitations upon his rights, which limitations grow out of the more important requirement for the protection of the public health, safety, morals and general welfare. Thus, detached from its relation to similarly classified properties within the area, petitioner's property would no doubt come within the protection of the constitutional principles upon which he so strongly relies. With the many authorities cited by petitioner sustaining the protection of such constitutional rights we heartily concur. We might even concede that before Reno developed its "growing pains" and other evidences of swift urban growth, some, perhaps many, of the regulations contained in ordinance No. 791 and the land use plan accompanying it might have been rejected as arbitrary and oppressive. See opinion of Mr. Justice Sutherland for the Supreme Court of the United States in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 120, 71 L.Ed. 303, 54 A.L.R. 1016, and the annotation in the last citation commencing at

page 1030. The Euclid case recognized the many conflicting decisions of the state courts, but commented upon the constantly increasing tendency in the direction of the broader view sustaining zoning ordinances of this kind. The various grounds of the several courts supporting such ordinances are discussed at length, and we refer to the opinion in that case and the annotation following as forever settling this exercise of the police power, unless it clearly appears that the ordinance is arbitrary and unreasonable and has no substantial relation to the public health, safety, morals or general welfare. The court recognizes the fact that the matter of zoning has received the attention of commissions and experts whose reports bear every evidence of painstaking consideration, and that they concur in the view that the segregation of residential, business and industrial buildings "will increase the safety and security of home life, greatly tend to prevent street accidents, especially to children, by reducing the traffic and resulting confusion in residential sections, decrease noise and other conditions which produce or intensify nervous disorders, preserve a more favorable environment in which to rear children, etc."

As in Minkus v. Pond, 326 Ill. 467, 158 N.E. 121, and numerous other cases, petitioner does not appear to attack the ordinance as a whole, but contends that the ordinance, as it affects the property in question, and particularly the building inspector's rejection of petitioner's building application, concurred in by the board of adjustment and the city council, bears no relation to the public health, safety, morals or welfare, but is unreasonable, unjust and discriminatory. Unless we can say that the ordinance, as it affects petitioner's property, discloses an unreasonable or arbitrary exercise of power by the zoning authorities and has no substantial relation to the public health, safety, morals or general welfare, it is neither the duty nor the province of this court to interfere with the discretion invested in these authorities.

Wilkins v. City of San Bernardino, 29 Cal.2d 332, 175 P.2d 542.

■ Petitioner urges that because he purchased the particular building January 27, 1949, and because the building had been constructed under a building permit issued March 28, 1947 and because Reno's building ordinance was adopted May 10, 1948 and its land use ordinance adopted January 31, 1947, the ordinances in some way operate retroactively to deprive him of rights theretofore vested in him. This contention is without merit. He applied on January 17, 1950 to the building inspector for a building permit which would have permitted such reconstruction as to convert the building from a single-family unit into a two-family unit. No such right had theretofore vested in him. Petitioner does not contend that the original building permit of March 28, 1947 authorized him or his predecessors to construct a two-family structure.

■ Petitioner contends that when zoning ordinance No. 791 was adopted by Reno January 31, 1947, Reno's charter contained no authorization empowering the adoption of such an ordinance. The contention is without merit. Reno was incorporated in 1903. Nevada Stats.1903, p. 184, c. 102. There have been numerous amendments. Under Stats.1945, p. 431, c. 223, sec. 10.530 of article XII was added. This section definitely gave to the city council the power to regulate and restrict the use of land for trade, industry, residence or other purposes, including the right to regulate the types of structures in specified districts and to divide the city into districts for the purpose. The section is broadly drawn and is ample authority for the enactment of the ordinance in question. Nevada Stats.1941, p. 249, N.C.L.1929, 1931–1941 Supp., sec. 5063 et seq., was in addition a general act providing for city planning, the powers of planning commissions and zoning boards, the regulation of the use of land, etc. This general act, amended by Nevada Stats.1947, p. 834, c. 267, provided additional authority. Although petitioner contends that ordinance

No. 791 is not within the scope of the legislative authority granted by the act of 1941, we are satisfied that the powers there granted are amply sufficient to authorize the ordinance.

██ Petitioner attacks the ordinance as arbitrary and unreasonable. However, all property owners similarly situated are equally affected, and when there is taken into consideration the object to be accomplished, we cannot say that the means applied is unreasonable. Petitioner makes no attempt to negative the general residential character of the district, its peculiar suitability to single-family residences, the propriety of conserving property values for such purposes, the direction of building development in the district for single-family residences, etc. Consideration must be given to these elements before the ordinance may be stricken down as arbitrary and unreasonable. City of Olean v. Conkling, 157 Misc. 63, 283 N.Y.S. 66.

We have considered the authorities cited by petitioner in which zoning ordinances restricting construction to single-family dwellings were held to be unreasonable. In each of the cases cited there was a special reason for such holding, which is not applicable here. We find it unnecessary to review these cases.

██ Petitioner contends that under the ordinance the city officials enjoy unbridled arbitrary discretion, acknowledging neither guidance nor restraint. The criticism we find to be unjustified. The very allegations of the petition show that not only did the ordinance require, but the officials in question gave, due consideration to petitioner's application—in the first instance through the building inspector, in the second instance by the board of adjustment and finally by the city council.

██ Petitioner's general contention that the ordinance operates to confiscate private property without due process of law and that it denies to petitioner the equal protection of the law is without merit. Petitioner's incidental inconvenience and damage must give way to the

health, comfort, welfare and safety of the public, and his use of his property may be reasonably restricted accordingly. He may use it for the purposes for which other property in the district may be used. See City of Albany v. Anthony, 262 App. Div. 401, 28 N.Y.S.2d 963; Carter v. Harper, 182 Wis. 148, 196 N.W. 451.

Petitioner contends that the zoning ordinance, as applied to his property, is invalid under the holding of this court in State ex rel. Bishop of Reno v. Hill, 59 Nev. 231, 90 P.2d 217, 222, but there the court said: "It is to be borne in mind that we do not hold Sections 7 and 8 of the Zoning Ordinance invalid in their general scope or aspects, but only as applied to the building of the proposed church in the Residential District of Reno."

Petitioner earnestly contended in his oral argument that by the denial of the permit respondent had arbitrarily refused him permission to add additional doors and windows and to make other alterations obviously harmless. It is clear however that the proposed construction of a second kitchen and other installations resulting in a two-family unit was the basis of the building inspector's rejection of the application. The petition itself makes this clear. There is nothing in the presentation made to this court to indicate the respondent's refusal to permit ordinary required alterations and repairs.

The alternative writ is hereby vacated and the proceedings dismissed, and respondent allowed his costs.

HORSEY, C. J., and EATHER, J., concur.