TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Respondent, v. B. CRYSTAL & SON, Defendant, and TRAVELLERS PREMIUM CO., INC., Appellant.

First Department, June 26, 1956.

*Meyer Kraushaar* of counsel (*Philip Wolfson,* attorney), for appellant.

*Anthony Curreri* of counsel (*Seymour B. Quel* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for respondent.

BOTEIN, J. P.   The Triborough Bridge and Tunnel Authority has brought this action to enjoin the maintenance of an advertising sign on the outer wall of the building in which appellant is a tenant.   The Authority alleges that the sign is located within 500 feet, and in full view of the approaches to the Brooklyn-Battery Tunnel, and hence constitutes a violation of the provisions of section 569-b of the Public Authorities Law, imperiling the public peace, safety and health of the City of New York and the persons using the approaches to the tunnel. Appellant admits the existence and location of the sign but denies the applicability of the statute.   The Authority's motion under rule 112 for judgment on the pleadings was granted by Special Term.

The statute, which was enacted in 1939, provides: '' No outdoor advertising sign or device which refers to any subject other than the business actually conducted on the premises or to sale or rental of such premises and no such outdoor advertising sign or device exceeding ten feet in height above the sidewalk adjacent to the property on which such sign or device is located, shall hereafter be erected within five hundred feet of the Whitestone bridge project, or the *Brooklyn-Battery bridge project* or the approaches and connections of such projects, if within view thereof.   A violation of any of the provisions of this section may be restrained at the suit of the authority.'' (Emphasis supplied.)

There is no '' Brooklyn-Battery bridge project '', since authorization for the construction of a bridge was withdrawn by the Legislature a year after the enactment of the foregoing statute. The Authority urges that despite this the statute should be construed so as to be equally applicable to the Brooklyn-Battery Tunnel, which was ultimately built pursuant to a 1936 statute.

Where, as here, the wording of a statute is expressed in clear language and is not confusing or contradictory, it is the duty of the courts to enforce the law in accordance with the letter of the statute (*Matter of De Peyster*, 210 N. Y. 216, 225; *People ex rel. Onondaga County Sav. Bank* v. *Butler*, 147 N. Y. 164). The statute is definite and unambiguous. The word " bridge " has a clear and well-defined meaning, readily distinguishable from the word " tunnel ". Furthermore, no construction other than the face meaning of this statute can be distilled from the history of the relevant legislation.

The power to construct a *tunnel* from Brooklyn to the Battery was originally vested in the New York City Tunnel Authority by section 2 of chapter 1 of the Laws of 1936. Significantly, no power was given to that Authority to prohibit signs at the approaches to the tunnel project. In 1939, however, when the Triborough Bridge Authority was authorized to construct a *bridge* from Brooklyn to the Battery, the statute here involved was also enacted (L. 1939, ch. 874), empowering the Triborough Bridge Authority to restrain the erection of advertising signs as therein specified. Then doubt arose as to the power of the Triborough Bridge Authority to proceed with the bridge project (1940 Atty. Gen. 404). Hence, by chapter 6 of the Laws of 1940, the Legislature acted to repeal the sections of the Triborough Bridge Authority Act relating to the Brooklyn-Battery Bridge. But the Legislature took no action one way or the other either to repeal or to amend that part of the above-quoted section 569-b, which dealt with restriction of advertising signs in connection with the abandoned Brooklyn-Battery Bridge project.

The New York City Tunnel Authority, which had not been granted any power to restrict the erection or maintenance of advertising signs, then proceeded with the construction of the tunnel. The Triborough Bridge Authority no longer had jurisdiction over the project. Hence, in 1940 neither Authority could have acted to restrict signs near the tunnel. In 1946 the New York City Tunnel Authority and the Triborough Bridge Authority were merged in one consolidated Authority to be known as the Triborough Bridge and Tunnel Authority, in which the powers of the original Authorities were vested (L. 1946, ch. 954). Neither of the original Authorities having had during the 1940–1946 period the power to prohibit advertising signs near the tunnel, the mere fact of their merger could not call such power into being. A provision of the law, once rendered inoperative by a subsequent enactment, cannot be revived without explicit sanction (cf., General Construction Law, § 90).

No clear legislative intention to subject the tunnel and its approaches to the sign prohibition can therefore be derived from a study of the legislative history. The Legislature had numerous opportunities, if it so desired, to change or amend section 569-b to make it applicable to the tunnel in explicit language. It is not for the courts to correct supposed errors, omissions or defects in legislation (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523, 525). "A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration." (*Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634, 639.) This is especially so when the statutes under construction restrict the manner in which real property can be used, since such statutes are in derogation of common-law rights, and the provisions thereof are not to be extended by implication (*Matter of 440 E. 102nd St. Corp.* v. *Murdock,* 285 N. Y. 298; *City of Albany* v. *Anthony,* 262 App. Div. 401, 404).

Functional and physical differences between bridge and tunnel also compel the conclusion that regulations appropriate to the one may be inappropriate to the other. As a tunnel is subriparian for most of its distance, signs on adjacent buildings, no matter what the size, would not be visible to drivers and passengers in vehicles using the crossing. The same would not hold true for users of a bridge. Also, the approaches to a bridge and a tunnel are different. The approaches to a bridge rise above ground, affording an unobstructed view of the adjacent area, while the approaches of a tunnel drop below ground level. It is not without significance, therefore, that section 569-b proscribes signs more than 10 feet high, for presumably signs higher than 10 feet would be readily visible from a bridge and its approaches. It is to be noted that no prohibition such as the one here urged exists for the areas surrounding the Lincoln Tunnel, Holland Tunnel or Queens-Midtown Tunnel. The Legislature not having said so explicitly, the court may not presume that the Legislature intended this sign prohibition to apply uniquely to the Brooklyn-Battery Tunnel.

Even if the statute were to be construed as applicable to the Brooklyn-Battery Tunnel, it was improper to grant plaintiff's motion for judgment on the pleadings. The statute does not prohibit all signs, but only those referring to a subject "other than the business actually conducted on the premises or to sale or rental of such premises". Appellant is a tenant of the premises in question, and there is no allegation that the sign

did not refer to the business it conducted or the sale or rental of its premises.

The Authority's allegation that the continued existence of the appellant's sign imperils the public peace, safety and health is refuted by the very exceptions recited in the statute. A ban on *all* signs, or signs of sizes, shapes, colors or designs which might prove to be distracting to those using the approaches might be said to have some reasonable connection with the public safety, and hence would come within the police powers of the State. Since, however, certain signs are to be permitted irrespective of their size or height, or potentialities for distraction, it is apparent that the prohibition is based on factors that bear no relation to the public health or safety (see *People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126). A sign advertising a business conducted on the premises may be just as distracting, just as objectionable, or, if aesthetics is the objective, just as ugly, as a sign advertising a business not conducted in the building. The standard or regulation must be designed to have some reasonable relationship to purposes within the scope of the State's police powers, and arbitrary distinctions which do not actually promote such objectives cannot be sustained (*Nectow* v. *City of Cambridge,* 277 U. S. 183, 188; *Matter of Mid-State Adv. Corp.* v. *Bond,* 274 N. Y. 82). A prohibition which cannot be equated with the evil to be remedied is arbitrary and unreasonable (*Defiance Milk Prod. Co.* v. *Du Mond,* 309 N. Y. 537).

Since this is a motion under rule 112 and it is clear that plaintiff cannot prevail under any circumstances, the order and judgment appealed from granting plaintiff's motion should be reversed and the complaint dismissed.

RABIN, COX, FRANK and VALENTE, JJ., concur.

Judgment and order unanimously reversed, with costs, plaintiff's motion for judgment denied and judgment is directed to be entered in favor of the defendant-appellant dismissing the complaint herein, with costs.