DEAN ELSON, ROBERT LEE, M. B. PARKER, JAMES MORELAND and ARTHUR BARRETT, Petitioners, v. GRANT L. BOWEN, District Judge, EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Clark, Respondent.

No. 5438

December 20, 1967                    436 P.2d 12

*Edwin L. Weisl, Jr.,* Assistant Attorney General, *Carl Eardley,* Acting Assistant Attorney General, *Joseph L. Ward,* United States Attorney for the District of Nevada, *Julien G. Sourwine,* Assistant United States Attorney for the District of Nevada, *Alan S. Rosenthal,* and *Robert V. Zener,* Department of Justice, Washington, D.C., for Petitioners.

*Jones & Jones,* of Las Vegas, *Peter R. Taft, Thomas A. Wadden, Jr.,* of Washington, D.C., *Bryant R. Burton,* and *Adrian P. Marshall,* of Beverly Hills, California, for Respondent.

516

**O P I N I O N**

By the Court, ZENOFF, J.:

Three lawsuits were brought to recover damages arising out of allegedly illegal electronic surveillance of conversations at hotels in Las Vegas constituting invasion of privacy and violation of Sec. 6, Chapter 242, Stats. of Nevada, 1957. (Cf. Fowler v. So. Bell Tel. & Tel. Co., 343 F.2d 150 (5th Cir. 1965).) That statute, NRS 200.650, provides:

"Unauthorized, surreptitious intrusion of privacy by listening device prohibited. Except as otherwise provided in NRS 200.660 to 200.690, inclusive, no person shall intrude upon the privacy of other persons by surreptitiously listening to, monitoring or recording, or attempting to listen to, monitor or

record, by means of any mechanical, electronic or other listening device, any private conversation engaged in by such other persons, or disclose the existence, contents, substance, purport, effect or meaning of any such conversation so listened to, monitored or recorded, unless authorized to do so by one of the persons engaging in conversation."

There is a provision in the statute which allows the obtaining of a court order for monitoring which in these cases was not done. NRS 200.660.

In two of the actions, A–28155 and A–28157, the defendants are the Central Telephone Company and/or certain employees of that company. In the third action, A–28156, the defendants are F.B.I. agents Elson, Lee, Barker, Moreland and Barrett, who are alleged to have performed with others the actual "bugging." Edward Levinson and Fremont Hotel, Inc., are the plaintiffs in this and Case No. A–28155. Case No. A–28157 is a class action brought by John Grandi on behalf of all telephone company subscribers. The issue presented before this court applies to all of the actions and is solely confined to the plaintiffs' efforts to secure information from agent Elson at the taking of his deposition. Elson and the other agents were instructed by the Attorney General of the United States not to answer the material allegations of the complaints because the answers would reveal privileged information. They were also instructed by the Attorney General not to give certain information in depositions for the same reason. These orders were in accordance with the exercise of executive privilege and Department of Justice Order No. 324–64 (now 385–67 (12 C.F.R., Sec. 16.11 through 16.14)).[1]

---

[1]28 C.F.R. § 16.1. *"Production or disclosure of official information or material in response to a subpoena, order, or other demand prohibited unless approved by the Attorney General.*

"No officer or employee of the Department of Justice shall produce or disclose, in response to a subpoena, order, or other demand (hereinafter in this part referred to as a 'demand') of a court or other authority any information or material contained in the files of the Department of Justice or any other information or material acquired as a part of the performance of his official duties or because of his official status, without the prior approval of the Attorney General. For the purposes of this part, the term 'officer or employee of the Department of Justice' includes all officers and employees of the United States appointed by, or subject to the supervision, jurisdiction, or control of, the Attorney General of the United States, including United States Attorneys, United States Marshals, and members of the staffs of those officials.

"§ 16.2. *Procedure in the event of a demand for production or disclosure.*

"(a)(1) Except as provided in paragraph (b) of this section, whenever a demand is made upon an officer or employee of the Department

We direct our attention to the order of the trial court which granted plaintiffs' motions to compel Elson to testify, struck the incomplete answer of the defendants, and required production of certain material sought by plaintiffs' subpoena duces

of Justice for the production or disclosure of information or material contained in the files of the Department of Justice or for the production or disclosure of any other information or material acquired as a part of the performance of his official duties or because of his official status, he shall immediately notify the Attorney General of such demand. If possible, the Attorney General shall be notified before the officer or employee concerned replies to, or appears before, the court or other authority.

"(2) The appropriate United States Attorney, or such other attorney as may be designated for the purpose, shall appear with the officer or employee upon whom the demand shall have been made, and inform the court or other authority (i) that § 16.1 of this part prohibits the officer or employee from producing or disclosing the information or material demanded without the prior approval of the Attorney General, and (ii) that the demand has been, or is being, as the case may be, referred for the prompt consideration of the Attorney General. The United States Attorney, or the attorney designated, shall provide the court or other authority to stay the demand pending the receipt of instructions or directions from the Attorney General concerning the demand.

"(b) Whenever a demand of the type described in paragraph (a) of this section is made upon an officer or employee of the Department of Justice by a court or other authority while he is appearing before, or is otherwise in the presence of the court or other authority, the officer or employee, or the United States Attorney or other appropriate Government attorney, acting on behalf of the officer or employee, shall (1) immediately inform the court or other authority that § 16.1 prohibits the officer or employee from producing or disclosing the information or material demanded without the prior approval of the Attorney General, and (2) offer to refer the demand for the prompt consideration of the Attorney General. Unless the court or other authority withdraws the demand, the United States Attorney, or other appropriate Government attorney, shall provide the court or other authority with a copy of the regulations prescribed by this part and shall respectfully request the court or other authority to stay the demand pending the receipt of instructions or directions from the Attorney General concerning the demand.

"§ 16.3. *"Procedure in the event of an adverse ruling.*

"If the court or other authority declines to stay the effect of the demand in response to a request made in accordance with either § 16.2(a)(2) or (b) pending the receipt of instructions or directions from the Attorney General, or if the court or other authority rules adversely on any claim of privilege that may be asserted in conformity with the provisions of this part or with instructions or directions issued by the Attorney General pursuant thereto, the officer or employee upon whom the demand shall have been made shall, pursuant to the regulations prescribed in this part, respectfully decline to produce or disclose the material or information demanded (United States ex rel. Touhy v. Ragen, 340 U.S. 462)."

tecum for in camera inspection. The F.B.I. agents petitioned this court for a writ of prohibition to prevent the court below from compelling them to produce official documents, to give depositions, and to file pleadings concerning them in violation of the instructions of the U.S. Attorney General and regulations of the U.S. Justice Department and the Attorney General's exercise of executive privilege.

The common law of evidence has long recognized certain rules of privilege which authorize the withholding of pertinent facts in a judicial proceeding. United States v. Reynolds, 345 U.S. 1 (1953). One of these is said to apply to government secrets, but that one is subject to the requirement that the government has the duty in seeing that justice is done. Roviaro v. United States, 353 U.S. 53 (1957); Carrow, Governmental Nondisclosure in Judicial Proceedings, 107 U.Pa.L.Rev. 166 (1958).

Of the numerous authorities relating to the question of discovery from governmental agents and agencies none directly involve the seeking of information from the agents who are parties in the litigation and whose alleged illegal activities are the subject of the lawsuit. That is our situation here. Elson, the F.B.I. agent, had refused to testify at his deposition on the grounds that the Attorney General forbade him to answer the questions and ordered that he refuse to produce the documents and to file an answer pursuant to departmental order and the claim of executive privilege. He and the other agents are defendants in the lawsuit. By stipulation, whatever in the proceedings relate to Elson applies to the other agents since he was the agent in charge.

At a first deposition, the Attorney General of the United States, as head of the Department of Justice, by affidavit instructed Elson not to answer certain selected questions basing his instruction on executive privilege and Departmental Order No. 324–64. At a later deposition, after the Attorney General had read the first, Elson was permitted to answer some of the questions, but not all.

Elson's attorneys, who are attorneys in the Department of Justice, seek to prevent Elson from being compelled to testify after he recited the Attorney General's exercise of executive privilege and the departmental order. At the trial court hearing they submitted to the trial judge the logs and summaries of the conversations illegally monitored. The respondent plaintiffs acknowledged they had no right to examine the intra-departmental files and memoranda of the Department of Justice. In

fact, they specifically excluded these from their subpoena duces tecum.

Because some information was known about the electronic surveillance of the F.B.I. agents, Levinson wanted depositions concerning all of it as it pertained to these cases. He hoped to learn from Elson, who was the agent in charge, the identities, methods, locations, and other relevant information toward that end, and this is what Elson refused to tell.

Elson acknowledges the right of judicial examination of the executive privilege, but contends that he need not testify in spite of a court order to the contrary if his executive head commands him not to do so. See Ex parte Sackett, 74 F.2d 922 (9th Cir. 1935); North Carolina v. Carr, 264 F.Supp. 75 (W.D.N.C. 1967). (In Carr, proceedings were started in a state court and removed by motion to the federal court. Title 28 U.S.C., §§ 1442–1449, so provides when a federal agent is held in contempt by a state court.)

1. Judicial review is appropriate when the claim of executive privilege or the right under departmental orders are exercised. United States v. Reynolds, supra; Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962); Appeal of U.S. Securities & Exchange Com'n, 226 F.2d 501 (6th Cir. 1955); N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5th Cir. 1961).

We cannot perceive the reason for the Attorney General's order silencing the agent. The massive eavesdropping program became a matter of public knowledge after a former agent of the F.B.I. admitted that he gave an interview to the New York Times detailing the department's eavesdropping program, news articles to the same effect appeared in Life Magazine and in leading newspapers with wide circulation, and in Kolod v. United States, 371 F.2d 983 (10th Cir. 1967), and United States v. Baker, 262 F.Supp. 657 (D.D.C. 1966), F.B.I. agents testified extensively of their eavesdropping tactics which included the subject matter that led to this lawsuit. The Solicitor General of the United States also advised the U.S. Supreme Court of the F.B.I. use of listening devices. Black v. United States, 385 U.S. 26 (1966).

Nevertheless, petitioners urge that Boske v. Comingore, 177 U.S. 459 (1900), and Touhy v. Ragen, 340 U.S. 462 (1951), prevent trial courts from compelling government agents to reveal by testimony or production of documents agency information when forbidden to do so by executive order. We are not

in accord with their broad construction of those two cases. *Boske* is confined to the declaration that departmental regulations which centralize the authority of department records upon the department head and not his subordinates are valid. *Touhy* extends the claim of executive privilege and department centralized responsibility to come within the discretion of the department head, such as the Attorney General who is the department head of the Department of Justice. The case refers to production of papers—makes no reference to oral testimony. Particularly as expressed by Justice Frankfurter in his concurring opinion, *Touhy* also stands as a forerunner for the proposition that the exercise of the executive's discretion can be judicially reviewed. The right of that judicial review is conclusively established in United States v. Reynolds, supra. (See also Roberts v. United States, 389 U.S. 18 (Case No. 330, decided October 16, 1967, where the Solicitor General acknowledged that F.B.I. logs pertaining to monitored conversations are available for judicial review.)

Without lawful sanction (NRS 200.660, supra), eavesdropping is an intrusion into a constitutionally protected area, the right of privacy, a violation of the 4th and 14th amendments. Berger v. New York, 388 U.S. 41 (1967). By its very nature its practice places an invisible policeman in every bedroom. Douglas, J., concurring opinion, Berger v. New York, supra, page 64. If, though legally forbidden, eavesdropping can be concealed under the guise of official protection via executive privilege and departmental order (absent any concern of national security), its use would continue. No one would be secure in the privacy of his home or in his pursuit of daily life.

2. We find in Reynolds the key to the roomful of obscurity in this difficult area where an agent of the government is held to answer to the court on the one hand and by so doing must defy the orders of his superior on the other. The U.S. Supreme Court said in Reynolds, "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." Although the privilege was upheld in Reynolds because military secrets were directly involved, were they not present (that the information did not concern the national security), the ruling of the court would nevertheless apply. The withholding of evidence at the caprice of executive officers would not be permitted.

The Justice Department contends that the information would

reveal F.B.I. tactical secrets and that unverified and hearsay conversations that were monitored would harm innocent persons. Laudable as the purpose may be and justifiably respected as the F.B.I. agents are, the principle applies to one and all in government alike. Where the information sought exists only in the mind and memory of the agents, collateral deposition proceedings against the Attorney General may be totally ineffectual.

The Attorney General is not personally entered into the action but his agents who acted at his directions are.

Government cannot break the law to enforce the law, People v. Cahan, 282 P.2d 905 (Cal. 1955), and it follows that government should not be allowed to use the claims of executive privilege and departmental regulations as a shield of immunity for the unlawful conduct of its representatives. (See Rosee v. Bd. of Trade of Chicago, 36 F.R.D. 684 (N.D. Ill. 1965); also Giancana v. Johnson, 335 F.2d 372 (7th Cir. 1964).) The trial court reviewed all of the considerations and decided that government security was not involved, that the information solicited was not privileged, and that the agents should testify, presumably to all relevant matters. We agree.

The application for writ is denied.

THOMPSON, C. J., concurs.

COLLINS, J., BATJER, J., and BABCOCK, D. J., concurring:

We concur in the result announced, but would limit the holding.

We must keep clearly in mind the issue before us in this application for prohibition. Petitioners' sole contention is the lack of jurisdiction of the trial court to require Elson to testify upon deposition, to answer fully plaintiffs' complaint, and to require production of certain material sought by plaintiffs for an in camera inspection by the court. We are not asked to review the discretion of the lower court as to the scope or extent of its orders.

With that limitation in mind, certain conclusions emerge with great clarity. There is no doubt the Nevada trial court has personal jurisdiction over Elson, Parker, Lee, and Moreland. They are parties to the action. Even though the action seeks damages against them personally for what they apparently did as members of the F.B.I., they neither have sought to remove the

entire action to the Federal court nor end Nevada's jurisdiction over them as individuals for what they did as Federal agents. Because of their hybrid role the Attorney General of the United States seeks to exercise control of their personal actions in the lawsuit. Yet he declines or has failed to appear in the action himself and litigate in a meaningful manner the nature and extent of the executive privilege he insists the agents claim. He stands outside the periphery of our Nevada courts' jurisdiction and pulls the strings which he hopes will control the effective exercise of that jurisdiction. The trial court, in which the executive privilege is claimed, has the right to pass upon the claim of the privilege and the extent to which it will be allowed in protecting the secrets, security and interest of the United States. United States v. Reynolds, 345 U.S. 1 (1953); N.L.R.B. v. Capitol Fish Co., 294 F.2d 868 (5 Cir. 1961). Anything less would absolutely and surely frustrate the full exercise of a court's power (the same rule should apply to both state and federal courts). A clearer example of frustration of a court's process cannot be suggested where, as here, it has the necessary parties before it.

In this case we need not and, in fact should not, be concerned with the question of why the attorney general silenced the agents, or whether or not eavesdropping by F.B.I. agents has become a matter of public knowledge, or whether there was or was not illegal electronic surveillance, nor even whether or not, without lawful sanction, eavesdropping is an intrusion into a constitutionally protected area of the right of privacy, and a violation of constitutional guarantees.

The writer of the principal opinion discusses matters well outside the question of whether or not the trial judge had the right to look behind the claim of executive privilege. An examination of the extent of the trial court's action is beyond the scope of this review. We are not here concerned with the depth of the trial court's inquiry, but only with whether or not the decision of the trial judge was within the realm of his jurisdiction. His decision was clearly within his jurisdiction and the application for a writ of prohibition is properly denied.

MOWBRAY, J., being disqualified, the Governor designated Honorable Howard W. Babcock, of the Eighth Judicial District Court, to sit in his place.