STATE OF NEVADA ex rel. PRESTON E. TIDVALL, SUPERINTENDENT OF BANKS; EX REL. ROBERT LIST, ATTORNEY GENERAL, PETITIONERS, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, THE HONORABLE MICHAEL J. WENDELL, A JUDGE THEREOF; TYRONE HAVAS, DOING BUSINESS AS COURTESY MOTORS AND BANK OF NEVADA, A NEVADA BANKING CORPORATION, RESPONDENTS.

No. 8020

August 26, 1975          539 P.2d 456

*Robert List,* Attorney General, and *E. William Hanmer,* Deputy Attorney General, Carson City, for Petitioners.

*Smith & O'Brien* and *Paul V. Carelli,* Las Vegas, and *Ross & Crow,* Carson City, for Respondents.

# OPINION

By the Court, BATJER, J.:

The district court order which is being challenged in this petition arose out of an action to which petitioner, Preston E. Tidvall, Superintendent of Banks of the State of Nevada, is not a party. Respondent Bank of Nevada sued co-respondent Tyrone Havas, d.b.a., Courtesy Motors, to recover money and personalty in which the bank claims a security interest. Havas' answer was accompanied by a counterclaim alleging breach of contract.

A series of subpoenas duces tecum were caused to be issued by Havas and opposed on grounds of irrelevancy by the bank. The district court ordered that the subpoenas be limited to production of records relating only to the ten vehicles repossessed by the bank from Havas. His next motion to produce much of the same material covered by the limited subpoenas duces tecum was denied. Prior to this denial Havas had filed a request for production of documents, again seeking much of the same material previously denied him by the court, but in addition he sought audit [examination] reports made by the superintendent concerning Courtesy Motors from January 1970 to March 1974.

The bank objected generally to this latest motion to produce, and specifically, to production of the audit [examination] reports on the basis of NRS 665.055, 665.065 and 665.075.[1]

---

[1]NRS 665.055:

"1. All examination reports and all information obtained by the superintendent and his staff in conducting examinations of banks is confidential and privileged information and, except as otherwise provided in this Title, shall not be made public or otherwise disclosed to any person, firm, corporation, agency, association, governmental body or other entity.

2. No employee or other member of the staff of the superintendent shall disclose or permit disclosure of any confidential or privileged information to anyone other than an employee or member of the staff of the superintendent entitled to such informataion for the proper performance of his official duties, unless authorized to do so by the superintendent in accordance with the provisions of this Title."

NRS 665.065:

"1. The superintendent may make state bank examination reports prepared by his office available to:

(a) Any federal agency having jurisdiction over state banks and which makes examination of state banks.

Upon the bank's failure to meet Havas' request for production, he filed a motion to produce. In its order disposing of that motion the district court denied the bank's objection to production of the audit [examination] reports relating solely to Courtesy Motors. The petitioners now seek a writ of prohibition to arrest execution of that order, and to prevent discovery of the petitioners' bank examination reports which are in the bank's possession. NRS 34.320–34.350.

The petitioners contend that bank examination reports prepared by the superintendent for use in the supervision of a bank, are privileged and confidential material that may not be discovered or disclosed, and therefore the respondent court's actions, as well as its threatened actions, are improper because it is exceeding its jurisdiction.[2]

---

(b) The director of the department of commerce for his confidential use.

(c) The state board of finance for its confidential use, when such report is necessary for the state board of finance to perform its duties under this Title.

2. All such examination reports made available shall remain the property of the banking division, and no person, agency or authority to whom such reports are made available, or any officer, director or employee thereof, shall disclose any of such reports or any information contained therein, except in published statistical material that does not disclose the affairs of any individual or corporation."

NRS 665.075:

"1. The report of examination made by an examiner of the banking division is designed for use in the supervision of the bank. The bank's copy of the report is the property of the superintendent and is furnished to the bank solely for its confidential use.

2. The bank's directors, in keeping with their responsibilities both to depositors and to stockholders, shall thoroughly review the report. Under no circumstances shall the bank, or any of its directors, officers or employees disclose or make public in any manner the report or any portion thereof. Such report shall not be made available to other banking institutions in connection with proposed transactions such as mergers and consolidations. Such report shall not be made available to a clearing house association, but a bank may voluntarily disclose information concerning its affairs to such clearing house association where such disclosure is through reports prepared by the bank or by others at the request of the bank."

[2]NRS 49.025:

"1. A person making a return or report required by law to be made has a privilege to refuse to disclose and to prevent any other person from disclosing the return or report, if the law requiring it to be made so provides.

2. A public officer or agency to whom a return or report is required by law to be made has a privilege to refuse to disclose the return or report if the law requiring it to be made so provides.

3. No privilege exists under this section in actions involving false statements or fraud in the return or report."

The respondent Havas counters by contending: (1) that the petitioner Tidvall who is not a party to the original action has no standing to claim the privilege of nondisclosure by way of prohibition; (2) that statutes relied upon by the petitioners are an unconstitutional invasion of the separation of powers and violate equal protection and due process clauses of the United States Constitution and Art. 1, Sec. 8 of the Nevada Constitution; and (3) that he is entitled to discovery of the superintendent's examination report under NRCP 34.

1.    Prohibition is the remedy which is generally employed to prevent improper discovery. See Greyhound Corp. v. Superior Court, Merced County, 364 P.2d 266 (1961). Gene Compton's Corp. v. Superior Court, 23 Cal.Rptr. 250 (1962). Sullivan v. Superior Court for County of San Mateo, 105 Cal.Rptr. 241 (1972). Cf. Maheu v. District Court, 88 Nev. 26, 493 P.2d 709 (1972). Ford Motor Company v. Angelucci, 455 S.W.2d 528 (Ky. 1970).

Here the superintendent had a statutory duty to protect the confidentiality of his examination reports and prohibition was the only avenue available to effect that protection. We reject respondent Havas' contention that the superintendent had no standing to exercise his statutory privilege against disclosure by way of prohibition.

2.    The United States Supreme Court in United States v. Nixon, 418 U.S. 683, 709, 94 S.Ct. 3090 (1974), expressly recognized and distinguished privileges against forced disclosure created by statute, such as the attorney-client privilege, from privileges implied from a grant of power, such as executive privileges, when it said:

"Only recently the Court restated the ancient proposition of law, albeit in the context of a grand jury inquiry rather than a trial,

" 'that 'the public . . . has a right to every man's evidence,' except for those persons protected by a constitutional, common law, or *statutory* privilege, United States v. Bryan, 339 U.S. [323], at 331 [70 S.Ct. 724, 94 L.Ed. 884] (1949); Blackmer v. United States, 284 U.S. 421, 438 [52 S.Ct. 252, 76 L.Ed. 375] . . . .' Branzburg v. [Hayes] United States, 408 U.S. 665, 688 [92 S.Ct. 2646, 33 L.Ed.2d 626] (1972).' " The privilege at issue in the present case is a statutory privilege, and as such, is a pronouncement of public policy. "The legislature or the people, as the case may be, formulate policy." Grant and McNamee v. Payne, 60 Nev. 250, 258, 107 P.2d 307 (1940).

Our statute authorizing the exercise of privilege against disclosing government information is unequivocal and specific. In other jurisdictions such a privilege exists only if the interest in maintaining the secrecy of the information outweighs due process considerations in the particular case.[3] In those jurisdictions it becomes necessary for the trial judge to examine the information claimed to be privileged in order to balance the competing considerations and determine whether or not disclosure of the information would be against public policy. Here revelation of the information asserted to be privileged may not be compelled in order to determine whether or not it is privileged because the legislature has granted the privilege under the statutes relied upon by the petitioners.

The legislature did not empower the superintendent to place whatever information he might deem confidential beyond the reach of a court order. Instead, it has specifically declared all examination reports and all information obtained by the superintendent in conducting examinations of banks to be confidential and privileged information and has given the superintendent the absolute right to exercise the privilege of nondisclosure.

It is in the public interest to promote acquisition by the superintendent of banks of full information regarding the matters within the purview of his official duties, and it is obvious that without some such protection the information so obtainable would be greatly curtailed.

In *Nixon* the High Court was dealing with neither a privilege specifically delineated by statute nor a constitutional reference to a privilege, but rather the "President's generalized interest in confidentiality". See Elson v. District Court, 83 Nev. 515, 436 P.2d 12 (1967).

Here we are not concerned with the balance between a public interest and the need for relevent evidence in civil litigation because the legislature has determined that the superintendent of banks making a report required by law has an absolute privilege to refuse to disclose the contents of that report and a duty to prevent others from disclosing the report. NRS 49.025(1) (2); NRS 665.055, 665.065, 665.075.

3. Respondent Havas, relying on Ex Parte French, 285 S.W. 513 (1926), contends that the statutes relied upon by petitioners amount to an unconstitutional classification.

---

[3]8 Wigmore, Evidence (McNaughton rev.) Sec. 2378, n. 9, citing illustrative statutes from many jurisdictions.

State statutes which make any unreasonable or arbitrary discrimination between different persons or different classes of people have been construed to be in violation of the Fourteenth Amendment. Connolly v. Union Sewer Pipe Co., 184 U.S. 540 (1902). Reasonable classification of persons or things for the various purposes of legislation is not inimical to either the United States Constitution or Art. 4, §§ 20, 21, Nevada Constitution. Boyne v. State ex rel. Dickerson, 80 Nev. 160, 390 P.2d 225 (1964); Shamberger v. Ferreri; 73 Nev. 201, 314 P.2d 384 (1957). See also: Koscot Interplanetary, Inc. v. Draney, 90 Nev. 450, 530 P.2d 108 (1974); Hard v. Depaoli, 56 Nev. 19, 41 P.2d 1054 (1935).

When there is a reasonable ground for the classification and the law operates equally on all within the same class, the classification is valid. Hinrichs v. First Judicial District Court, 71 Nev. 168, 283 P.2d 614 (1955); State v. Coleman, 67 Nev. 636, 224 P.2d 309 (1950); In Re Walters' Estate, 60 Nev. 172, 104 P.2d 968 (1940). Cf. Turner v. Staggs, 89 Nev. 230, 510 P.2d 879 (1973).

Since the question of classification is primarily one for the legislature, it is the duty of the courts to sustain it if there is any reasonable basis for the classification. In Mengelkamp v. List, 88 Nev. 542, 501 P.2d 1032 (1972), this court said: "Petitioners contend that it is unreasonable, and an abridgment of their 'privileges and immunities,' to require that persons must be 21 years of age to serve in our legislature, when they possess the right to vote at 18. Whenever the legislature draws a line, there often is little demonstrable difference in the cases on opposite sides of the line and closest to it. Still, unless it be demonstrated that there is clearly no rational and legitimate reason for the distinction drawn, we must uphold the law." See also: Norman v. City of Las Vegas, 64 Nev. 38, 177 P.2d 442 (1947).

An act of the legislature is presumed to be constitutional and should be so declared unless it appears to be clearly in contravention of constitutional principles. County v. County Comm'rs, 6 Nev. 30 (1879). In cases of doubt, every possible presumption and intendment will be made in favor of constitutionality. Courts will interfere only in cases of clear and unquestioned

violation of fundamental rights. City of Las Vegas v. Acker-man, 85 Nev. 493, 457 P.2d 525 (1969); Ex parte Philipie, 82 Nev. 215, 414 P.2d 949 (1966).

Respondents' reliance on Ex Parte French, 285 S.W. 513 (Mo. 1926) is misplaced because that court determined the non-disclosure statute unconstitutional because the entities and institutions which were allowed to be furnished copies of the bank commissioner's examination were creditors or debtors of state banks and trust companies or conducted business with them. Here the only entities authorized access to the examination reports are other information gathering and regulatory agencies. NRS 665.065(1). Furthermore, in *Ex Parte French* the record of the bank's dealings were not accessible to the plaintiff except through the commissioner of finance. Here the pertinent records of the Bank of Nevada are available to the respondent Havas via *subpoena duces tecum*.

It is not a matter of judicial concern that our legislature was either prudent or unwise in clothing the report of the superintendent of banks with the cloak of confidentiality and affording the superintendent the absolute right to exercise the privilege against disclosure. So far as the courts are concerned the public policy of the State of Nevada in this regard was crystallized by enactment of the statute involved. There is no merit in respondent's contention that the statutes are unconstitutional when measured by the tests of due process and equal protection of the Fourteenth Amendment of the Constitution of the United States.

4. NRCP 34 is limited to matters within the scope of NRCP 26(b), which authorizes parties to obtain discovery regarding any matter *not privileged*. Here the matter is statutorily privileged. Respondent Havas is not entitled to discovery of the superintendent's examination reports under NRCP 24.

Let a writ issue prohibiting the respondent court from taking any action to enforce that part of its order dated December 16, 1974, in case No. A 123437 in the Eighth Judicial District Court, which would require the Superintendent of Banks of the State of Nevada, The Bank of Nevada, a Nevada banking corporation, or anyone else to disclose any matter within the protection of NRS 665.055, 665.065 and 665.075.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.